## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | | |
|---|---|---|
| SUBSCRIBER HOLDINGS, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Civil Action File No. |
| v. | ) | 1:19-cv-01991-TWT |
| | ) | |
| BRIGHTSTAR CORP., BRIGHTSTAR DEVICE PROTECTION, LLC, f/k/a eSECURITEL HOLDINGS, LLC, BRIGHTSTAR RE LTD, f/k/a eSECURITEL RE LTD, BRIGHTSTAR US INC., and MOBILE LEASING SOLUTIONS, LLC, | ) ) ) ) ) ) ) | JURY TRIAL DEMANDED

CONFERENCE IS REQUESTED |
| | ) | |
| Defendants. | ) | |
| | ) | |

## CONSOLIDATED PRETRIAL ORDER

Plaintiff Subscriber Holding, LLC ("Subscriber") and Defendants Brightstar Corp., Brightstar Device Protection, LLC, f/k/a eSecuritel Holdings, LLC, Brightstar RE LTD, f/k/a eSecuritel RE LTD, and Brightstar US Inc. (collectively "Defendants"), by and through undersigned counsel and pursuant to LR 16.4, NDGA, hereby jointly submit their proposed consolidated pretrial order.

1.

There are no motions or other maters pending for consideration by the court except as noted:

In accordance with the Local Rules, Subscriber intends to file a motion to exclude Brightstar's disclosed expert, Mr. Tibbles, on the date of this filing.

Defendants are contemporaneously filing motions in limine, including pursuant to *Daubert*.

2.

All discovery has been completed, unless otherwise noted, and the court will not consider any further motions to compel discovery. (Refer to LR 37.1B). Provided there is no resulting delay in readiness for trial, the parties shall, however, be permitted to take the depositions of any persons for the preservation of evidence and for use at trial.

3.

Unless otherwise noted, the names of the parties as shown in the caption to this Order and the capacity in which they appear are correct and complete, and there is no question by any party as to the misjoinder or non-joinder of any parties.

4.

Unless otherwise noted, there is no question as to the jurisdiction of the court; jurisdiction is based upon the following code sections. (When there are multiple claims, list each claim and its jurisdictional basis separately.)

There is no question as to the Court's jurisdiction. Jurisdiction for each claim is based on the following: 28 U.S.C. § 1338.

5.

The following individually-named attorneys are hereby designated as lead counsel for the parties:

Plaintiff:    Edward F. Behm
              *Admitted Pro Hace Vice*
              ted.behm@saul.com
              Darius C. Gambino
              *Pro Hace Vice* (Pending)
              darius.gambino@saul.com
              Saul Ewing LLP
              1500 Market Street
              Philadelphia, PA 19102

              Coby S. Nixon

Georgia Bar No. 545005
cnixon@buchalter.com
Seth K. Trimble
Georgia Bar No. 851055
strimble@buchalter.com
BUCHALTER APC
3475 Piedmont Rd. NE Suite 1100
Atlanta, GA 30305
Phone: (404) 832-7533

Defendant:    Christina M. Baugh
Georgia Bar No. 241880
BARNES &THORNBURG LLP
3340 Peachtree Road NE, Suite 2900
Atlanta, Georgia 30326
Tel. (404) 846-1693
Fax (404) 264-4033
cbaugh@btlaw.com

Mark Durbin
*Admitted Pro Hac Vice*
BARNES & THORNBURG LLP
One North Wacker Drive, Suite 4400
Chicago, IL 60606-2833
Tel. (312) 357-1313
Fax (312) 759-5646
mark.durbin@btlaw.com

Other Parties (specify): <u>N/A</u>

6.

Normally, the plaintiff is entitled to open and close arguments to the jury. (Refer to LR39.3(B)(2)(b)).  State below the reasons, if any, why the plaintiff should not be permitted to open arguments to the jury.

The parties agree that Subscriber, as the plaintiff, is entitled to open and close arguments to the jury.

7.

The captioned case shall be tried ( X ) to a jury or (_____) to the court without a jury, or (_____) the right to trial by jury is disputed.

8.

State whether the parties request that the trial to a jury be bifurcated, i.e. that the same jury consider separately issues such as liability and damages. State briefly the reasons why trial should or should not be bifurcated.

**Plaintiff:**

Plaintiff does not seek bifurcation of issues at trial. This Court has established that "[i]n addition to the more general factors set forth in Rule 42(b); i.e., (1) convenience; (2) prejudice; (3) expedition; and (4) economy; a court reviewing a motion for separate trials may properly consider (5) whether the issues sought to be tried separately are significantly different; (6) whether they are triable by jury or the court; (7) whether discovery has been directed to a single trial of all issues; (8) whether the evidence required for each issue is substantially different; (9) whether one party would gain some unfair advantage from separate trials; (10) whether a single trial of all issues would create the potential for jury bias or confusion; and (11) whether bifurcation would enhance or reduce the possibility of a pretrial settlement." *Kimberly-Clark Corp. v James River Corp. of Virginia*, 131 F.R.D. 607, 608–09 (N.D. Ga. 1989).

In trade secret cases, bifurcation is particularly problematic due to the

intertwined nature of liability and damages issues—for example, to determine whether a trade secret was misappropriated often involves overlapping evidence with the calculation of damages, such as the value of the trade secret and the extent of its use. This Court has well established that the classic argument of "should [Defendants] prevail at the liability phase, there would be no need for all of the damages testimony[;]" therefore bifurcation "would serve judicial economy . . . does not advance the cause of bifurcation." *Rinehart v. GFI Mgmt. Servs., Inc.*, No. 1:13-CV-03304-ELR, 2016 WL 9455424, at 2 (N.D. Ga. Oct. 4, 2016).

Further, this Court has addressed whether bifurcation would reduce jury confusion due to the Plaintiff alleging two separate injuries, the verdict form being confusing as it includes both liability and damages, and bifurcation preventing the jury from relying on sympathy for Plaintiff. *See id.* This Court has dispelled all of these theories and should dispel Defendants reasonings for bifurcation on those same ground. First, this Court failed to see "how considering damages alongside . . . two . . . injuries will result in jury confusion such that bifurcation is appropriate." *Id.* Similarly, there is no reason to believe that jury confusion will occur due to the jury having to consider trade secret misappropriation and breach of non-disclosure claims alongside damages. Second, "the Court regularly uses verdict forms that address both liability and damages, and this practice does not result in jury confusion." *Id.* Lastly, the concern regarding sympathy for the Plaintiff is not a valid reason for bifurcation

as "the court is confident that with the aid of cautionary instruction, a jury will be able to fairly and impartially determine both liability and damages in a single trial." *Id*.

Defendants have failed to meet its burden in establishing bifurcation is necessary as "[b]ifurcation is the exception, rather than the rule." *Walker v. City of Hapeville*, No. 1:08-CV-1036-JEC-GGB, 2010 WL 11506427, at *1 (N.D. Ga. Nov. 22, 2010). The concepts found between liability and damages in this case are heavily intertwined as it would prejudice the Plaintiff in establishing the existence of a trade secrets and disclosure of said trade secrets by being handcuffed by not being able to discuss the economic value of said trade secrets through Defendants benefit of the trade secrets. Lastly, this Court has previously established the reasons outlined by the Defendants for jury confusion hold no water as "'the court should remain mindful of the traditional rule of the factfinder; i.e., to make an ultimate determination on the basis of a case presented in its entirety.'" *Id.* (internal citation omitted).

**Defendants:**

Defendants request the trial be bifurcated between liability and damages pursuant to Fed. R. Civ. P. 42(b). Rule 42(b) permits bifurcation of liability and damages "in furtherance of convenience or to avoid prejudice, or when separate trials will be conductive to expedition and economy," and "[o]nly one of these criteria need to be met to justify bifurcation." *Brom v. Bozell, Jacobs, Kenyon &*

*Eckhardt, Inc*., 867 F.Supp. 686 (N.D. Ill. 1994) (bifurcating case between liability and damages where evidence on damages would take considerable time and was not directly relevant to liability).

Here, bifurcating the trial between liability and damages would streamline the trial, avoid confusing the jury, and avoid undue prejudice to Defendants. Plaintiff never commercialized the purported trade secret or even attempted to commercialize the purported trade secret, aside from limited interactions with Brightstar Device Protection. Plaintiff instead relies exclusively on what it claims are the monetary benefits to Defendants for its damage claim. However, the proposed monetary benefits to Defendants are not from the alleged direct use of the purported trade secret, but instead premised on Plaintiff's argument that Defendants benefitted indirectly from third party programs that allegedly practiced the SAP and "drove" buy-back and trade-in business from which Defendants then benefitted.

To prove damages under its circuitous theory, Plaintiff must explore these indirect relationships and finances. Plaintiff must introduce evidence regarding Defendants' business relationship with third parties, including confidential information about those relationships, such as contract terms, pricing, and profit margins. Plaintiff also must introduce Defendants' internal confidential financial records and present expert testimony on Defendants' revenue, costs, margins, and financial performance – none of which relate to whether the SAP is a trade secret

existed and, if so, whether Defendants misappropriated it. Bifurcating the trial would streamline the case by potentially eliminating entirely two witnesses (a damages expert on each side), while limiting or potentially eliminating other testimony and documentary evidence related to Defendants' finances.

Furthermore, presenting the jury with purported "evidence" – or even the suggestion – that Defendant benefitted hundreds of millions of dollars from the indirect exploitation of an undefined purported trade secret, and that Plaintiff is entitled to an award of perhaps over half a billion dollars would unduly prejudice Defendants. It appears Plaintiff is using its enormous damages claim to establish the existence of impropriety in the first instance, with hopes to anchor the jury's thinking to a number in the stratosphere before establishing the existence of a trade secret or misappropriation.

Defendants believe introduction of their confidential financial materials will take considerable time, unnecessarily confuse the jurors, prejudice Defendants and should not be permitted until Plaintiff establishes that it has a trade secret and any misappropriation thereof.

9.

Attached hereto as Attachment "A" and made a part of this order by reference are the questions which the parties request that the court propound to the jurors concerning their legal qualifications to serve.

Defendants object to questions 13-16 in Attachment A as objectionable and not relevant to legal qualifications to serve as a juror. If Plaintiff wishes these questions to be asked, Defendants submit they should be asked, if at all, as part of Plaintiff's questions to be propounded to the jury (as part of Attachment B-1). Defendants further object to question 21 in Attachment A as objectionable and not relevant to legal qualifications to serve as a juror. Additionally, question 21 is a question that inappropriately attempts to instruct the potential jurors regarding the law applicable to this matter which is required to be left to the Court.

## 10.

Attached hereto as Attachment "B-1" are the general questions which plaintiff wishes to be propounded to the jurors on voir dire examination.

Attached hereto as Attachment "B-2" are the general questions which defendant wishes to be propounded to the jurors on voir dire examination.

Attached hereto as Attachment "B-3", "B-4", etc. are the general questions which the remaining parties, if any, wish to be propounded to the jurors on voir dire examination.

The court, shall question the prospective jurors as to their address and occupation and as to the occupation of a spouse, if any. Counsel may be permitted to ask follow-up questions on these matters. It shall not, therefore, be necessary for counsel to submit questions regarding these matters. The determination of whether the judge or counsel will propound general voir dire questions is a matter of courtroom policy which shall be established by each judge.

## 11.

State any objections to plaintiff's voir dire questions: _ Defendants object to question 21 in Attachment A as objectionable and not relevant to legal qualifications to serve as a juror, as well as a question that inappropriately attempts to instruct the potential jurors regarding the law applicable to this matter which is required to be left to the Court.

Plaintiff has no objections to Defendants' voir dire questions.

## 12.

All civil cases to be tried wholly or in part by jury shall be tried before a jury consisting of not less than six (6) members, unless the parties stipulate otherwise. The parties must state in the space provided below the basis for any requests for additional strikes. Unless otherwise directed herein, each side as a group will be allowed the number of peremptory challenges as provided by 28 U.S.C. § 1870. See Fed.R.Civ.P. 47(b).

The parties do not object to the limitation of the number of peremptory challenges provided by 28 U.S.C. § 1870.

## 13.

State whether there is any pending related litigation. Describe briefly, including style and civil action number.

There is no pending related litigation.

## 14.

Attached hereto as Attachment "C" is plaintiff's outline of the case which includes a succinct factual summary of plaintiff's cause of action and which shall be neither argumentative nor recite evidence. All relevant rules, regulations, statutes, ordinances, and illustrative case law creating a specific legal duty relied upon by plaintiff shall be listed under a separate heading. In negligence cases, each and every act of negligence relied upon shall be separately listed. For each item of damage claimed, plaintiff shall separately provide the following information: (a) a brief description of the item claimed, for example, pain and suffering; (b) the dollar amount claimed; and (c) a citation to the law, rule, regulation, or any decision authorizing a recovery for that particular item of damage. Items of damage not

identified in this manner shall not be recoverable.

15.

Attached hereto as Attachment "D" is the defendant's outline of the case which includes a succinct factual summary of all general, special, and affirmative defenses relied upon and which shall be neither argumentative nor recite evidence. All relevant rules, regulations, statutes, ordinances, and illustrative case law relied upon as creating a defense shall be listed under a separate heading. For any counterclaim, the defendant shall separately provide the following information for each item of damage claimed: (a) a brief description of the item claimed; (b) the dollar amount claimed; and (c) a citation to the law, rule, regulation, or any decision authorizing a recovery for that particular item of damage. Items of damage not identified in this manner shall not be recoverable.

16.

Attached hereto as Attachment "E" are the facts stipulated by the parties. No further evidence will be required as to the facts contained in the stipulation and the stipulation may be read into evidence at the beginning of the trial or at such other time as is appropriate in the trial of the case. It is the duty of counsel to cooperate fully with each other to identify all undisputed facts. A refusal to do so may result in the imposition of sanctions upon the non-cooperating counsel.

17.

The legal issues to be tried are as follows:

By Plaintiff Subscriber Holdings, LLC:

1.    Whether Brightstar misappropriated Subscriber's trade secrets by marketing and distributing the SAP to third parties without Subscriber's knowledge or consent; misrepresenting that is had not done so; and by violating the NDA.;

2.    Whether Brightstar breached the terms of the NDA;

3.    Whether Brightstar engaged in this misconduct directly or indirectly,

11

through affiliates or other entities;

4.    The amount of Subscriber's damages resulting from Brightstar's breach of the NDA;

5.    The amount of Subscriber's damages resulting from Brightstar's violations;

6.    The amount of punitive and exemplary damages that should be awarded to Subscriber.;

7.    Whether Subscriber should be awarded its attorney's fees and costs.

By Defendants:

1.    Whether Subscriber Holdings has established the Subscriber Assurance Program is a trade secret;

2.    If so, (a) whether Subscriber Holdings owns the Subscriber Assurance Program and (b) the identity and scope of the Subscriber Assurance Program;

3.    Whether Subscriber Holdings has established that any defendant misappropriated the trade secret;

4.    If so, when Subscriber Holdings knew or should have known of the misappropriation;

5.    Whether Subscriber Holdings suffered any recoverable damage, and if so, what damage;

6.    Whether Subscriber Holdings has established that Brightstar Device

Protection breached the non-disclosure agreement;

7.    If so, whether Subscriber Holdings has established it was damaged by any such breach, and if so, in what amount;

8.    Whether Subscriber Holdings' claims are barred by the applicable statute of limitations; and

9.    Whether Subscriber Holdings' claims are barred by laches for waiting too long to assert its claims and resulting prejudice to defendants.

18.

Attached hereto as Attachment "F-1" for the plaintiff, Attachment "F-2" for the defendant, and Attachment "F-3", etc. for all other parties is a list of all the witnesses and their addresses for each party. The list must designate the witnesses whom the party will have present at trial and those witnesses whom the party may have present at trial. Expert (any witness who might express an opinion under Rule 702), impeachment and rebuttal witnesses whose use as a witness can be reasonably anticipated must be included. Each party shall also attach to the list a reasonable specific summary of the expected testimony of each expert witness.

All of the other parties may rely upon a representation by a designated party that a witness will be present unless notice to the contrary is given ten (10) days prior to trial to allow the other party(s) to subpoena the witness or to obtain the witness' testimony by other means. Witnesses who are not included on the witness list (including expert, impeachment and rebuttal witnesses whose use should have been reasonably anticipated) will not be permitted to testify, unless expressly authorized by court order based upon a showing that the failure to comply was justified.

Attached hereto as Attachment "F-1-A" are Defendant's objections, if any, to Plaintiff's witness list. Attached hereto as "F-2-A" are Plaintiff's objections, if any, to Defendant's witness list.

19.

13

Attached hereto as Attachment "G-1" for the plaintiff, "G-2" for the defendant, and "G-3", etc. for all other parties are the typed lists of all documentary and physical evidence that will be tendered at trial. Learned treatises which are expected to be used at trial shall not be admitted as exhibits. Counsel are required, however, to identify all such treatises under a separate heading on the party's exhibit list.

Each party's exhibits shall be numbered serially, beginning with 1, and without the inclusion of any alphabetical or numerical subparts. Adequate space must be left on the left margin of each party's exhibit list for court stamping purposes. A courtesy copy of each party's list must be submitted for use by the judge.

Prior to trial, counsel shall mark the exhibits as numbered on the attached lists by affixing numbered yellow stickers to plaintiff's exhibits, numbered blue stickers to defendant's exhibits, and numbered white stickers to joint exhibits. When there are multiple plaintiffs or defendants, the surname of the particular plaintiff or defendant shall be shown above the number on the stickers for that party's exhibits.

Specific objections to another party's exhibits must be typed on a separate page and must be attached to the exhibit list of the party against whom the objections are raised. Objections as to authenticity, privilege, competency, and, to the extent possible, relevancy of the exhibits shall be included. Any listed document to which an objection is not raised shall be deemed to have been stipulated as to authenticity by the parties and shall be admitted at trial without further proof of authenticity.

Attached hereto as Attachment "G-1-A" are Defendant's objections, if any, to Plaintiff's exhibit list. Attached hereto as "G-2-A" are Plaintiff's objections, if any, to Defendant's exhibit list.

Unless otherwise noted, copies rather than originals of documentary evidence may be used at trial. Documentary or physical exhibits may not be submitted by counsel after filing of the pretrial order, except upon consent of all the parties or permission of the court. Exhibits so admitted must be numbered, inspected by counsel, and marked with stickers prior to trial.

Counsel shall familiarize themselves with all exhibits (and the numbering thereof) prior to trial. Counsel will not be afforded time during trial to examine exhibits that are or should have been listed.

20.

The following designated portions of the testimony of the persons listed below may be introduced by deposition:

See attachment J-1 for Plaintiff.

Defendants do not intend to introduce deposition testimony except for purposes of impeachment or if a witness becomes unavailable for trial.

Any objections to the depositions of the foregoing persons or to any questions or answers in the depositions shall be filed in writing no later than the day the case is first scheduled for trial. Objections not perfected in this manner will be deemed waived or abandoned. All depositions shall be reviewed by counsel and all extraneous and unnecessary matter, including non-essential colloquy of counsel, shall be deleted. Depositions, whether preserved by stenographic means or videotape, shall not go out with the jury.

21.

Attached hereto as Attachments "H-1" for the plaintiff, "H-2" for the defendant, and "H-3", etc. for other parties, are any trial briefs which counsel may wish to file containing citations to legal authority concerning evidentiary questions and any other legal issues which counsel anticipate will arise during the trial of the case. Limitations, if any, regarding the format and length of trial briefs is a matter of individual practice which shall be established by each judge.

22.

In the event this is a case designated for trial to the court with a jury, requests for charge must be submitted no later than 9:30 a.m. on the date on which the case is calendared (or specially set) for trial. Requests which are not timely filed and which are not otherwise in compliance with LR 51.1, will not be considered. In addition, each party should attach to the requests to charge a short (not more than one (1) page) statement of that party's contentions, covering both claims and defenses, which the court may use in its charge to the jury.

Counsel are directed to refer to the latest edition of the Eleventh Circuit

District Judges Association's Pattern Jury Instructions and Devitt and Blackmar's Federal Jury Practice and Instructions in preparing the requests to charge. For those issues not covered by the Pattern Instructions or Devitt and Blackmar, counsel are directed to extract the applicable legal principle (with minimum verbiage) from each cited authority.

23.

If counsel desire for the case to be submitted to the jury in a manner other than upon a general verdict, the form of submission agreed to by all counsel shall be shown in Attachment "I" to this Pretrial Order. If counsel cannot agree on a special form of submission, parties will propose their separate forms for the consideration of the court.

See Attachment I-1 for Plaintiff's proposed verdict form. See Attachment I-2 for Defendants' proposed verdict form.

24.

Unless otherwise authorized by the court, arguments in all jury cases shall be limited to one-half hour for each side. Should any party desire any additional time for argument, the request should be noted (and explained) herein.

Defendants respectfully submit that more than one-half hour per side should be permitted to address Plaintiff's claim for hundreds of millions of dollars. This case requires the parties to address events occurring over more than a decade, relating to industry, enterprise, and individual knowledge, captured in dozens of documentary exhibits, with multiple expert witnesses. And while Defendants see no basis for Plaintiff's claim that is now, in total, over half a billion dollars, they must take it seriously and seek adequate time to defend themselves. To this end, Defendants request that each side be allowed up to 45 minutes for its opening

statement and 60 minutes for its closing argument.

25.

If the case is designated for trial to the court without a jury, counsel are directed to submit proposed finding of fact and conclusions of law not later than the opening of trial.

26.

Pursuant to LR 16.3, lead counsel and persons possessing settlement authority to bind the parties met in person on July 18, 2025, to discuss in good faith the possibility of settlement of this case. The court (__) has or (__X__) has not discussed settlement of this case with counsel. It appears at this time that there is:

(____) A good possibility of settlement.
(____) Some possibility of settlement.
(__X__) Little possibility of settlement.
(____) No possibility of settlement.

27.

Unless otherwise noted, the court will not consider this case for a special setting, and it will be scheduled by the clerk in accordance with the normal practice of the court.

The parties request a special setting due to witness Greg Tibbles residing in

the United Kingdom and requiring international travel to attend the trial and provide

live testimony.

28.

The plaintiff estimates that it will require 2 days to present its evidence. The defendants estimate that it will require 2 days to present its evidence. The other parties estimate that it will require __N/A____ days to present their evidence. It is estimated that the total trial time is 4 days.

29.

IT IS HEREBY ORDERED that the above constitutes the pretrial order for the above captioned case (  X  ) submitted by stipulation of the parties or (____) approved by the court after conference with the parties.

IT IS FURTHER ORDERED that the foregoing, including the attachments thereto, constitutes the pretrial order in the above case and that it supersedes the pleadings which are hereby amended to conform hereto and that this pretrial order shall not be amended except by Order of the court to prevent manifest injustice. Any attempt to reserve a right to amend or add to any part of the pretrial order after the pretrial order has been filed shall be invalid and of no effect and shall not be binding upon any party or the court, unless specifically authorized in writing by the court.

IT IS SO ORDERED this 16th  day of    January, 2026.


_____
THE HONORABLE THOMAS W. THRASH, JR.
UNITED STATES DISTRICT JUDGE

18

Each of the undersigned counsel for the parties hereby consents to entry of the foregoing pretrial order, which has been prepared in accordance with the form pretrial order adopted by this court.

/s/ Edward F. Behm, Jr.
Edward F. Behm, Jr. (pro hac vice)
ted.behm@saul.com
Darius C. Gambino (pro hac vice)
darius.gambino@saul.com
**SAUL EWING LLP**
1500 Market Street, 38th Floor
Philadelphia, PA 19102-2186
Tel: (215) 972-7777
Fax: (215) 972-7725

Seth K. Trimble
Georgia Bar No. 851055
strimble@buchalter.com
Coby S. Nixon
Georgia Bar No. 545005
cnixon@buchalter.com
**BUCHALTER**
3475 Piedmont Rd. NE, Ste. 1100
Atlanta, Georgia 30305
Phone: (404) 832-7530

*Counsel for Plaintiff*
*Subscriber Holdings, LLC*

/s/ Christina M. Baugh
Christina M Baugh
cbaugh@btlaw.com
Mark Lawrence Durbin
Mark.Durbin@btlaw.com
**BARNES & THORNBURG LLP - GA**
Suite 1700
Prominence in Buckhead
3475 Piedmont Road, N.E.
Atlanta, GA 30305-2954
Tel: (404) 846-1693
Fax: (404) 264-4033

*Counsel for Defendants*
*Brightstar Corp., Brightstar Device*
*Protection, LLC, Brightstar Re Ltd.,*
*and Brightstar US, Inc.*

**<u>CERTIFICATE OF SERVICE</u>**

The undersigned hereby certifies that a copy of the foregoing was served

on all counsel of record via the Court's CM/ECF system on August 11, 2025.


<u>/s/ Edward F. Behm, Jr.</u>

# ATTACHMENT A

**The questions which the parties request that the court propound to the jurors concerning their legal qualifications to serve.**

1. Do you know Judge Thrash or any of his court staff?

2. Looking around, do you recognize any of the other potential jurors?

3. Have you heard or read anything about this case other than what you have been told here in court?

4. Are you, any of your relatives by blood or marriage, or any of your friends a current or former stockholder, director, officer, agent, owner, or employee of any of the following:

   a. Subscriber Holdings, LLC; or
   b. Brightstar Corporation, Brightstar Device Protection, Brightstar US, BrightStar Re Ltd. or eSecuritel Re Ltd.?

5. The parties have identified a number of potential witnesses in this case. I will read a list of witnesses. Please tell me whether you know, are related by blood or marriage to, have heard of, or have had dealings with any of these witnesses: [The Parties request that the Court read to the venire the witness names from Attachments F-1 and F-2].

6. Do you know or have you had any dealings with the following attorneys or firms who represent Subscriber Holdings, LLC: (a) Edward F. "Ted" Behm, Darius C. Gambino, and Irfan Hassam-Malani with the law firm of Saul Ewing LLP in Philadelphia, Pennsylvania and Chicago, respectively?, or (b) Coby Nixon and Seth K, Trimble of with the law firm of Buchalter APC in Atlanta, Georgia?

7. Do you know or have you had any dealings with the following attorneys or firms who represent Brightstar Corporation and its related entities: Christina M. Baugh and Mark L. Durbin with the law firm of Barnes & Thornburg LLP in Atlanta, Georgia and Chicago, Illinois?

8. Are you a citizen of the United States?

9.  Are you under eighteen years of age?

10. Do you have any difficulty speaking, reading, writing, or understanding the English language?

11. Do you have medical, physical, or mental health conditions, such as problems with your sight or hearing, which might affect your ability to server as juror in our case. If so, please describe.

12. Would service on this jury cause any undue hardship, burden, or extreme inconvenience to you or to any member of your immediate family?

13. Have you ever been deemed legally incompetent?

14. Do you have pending against you a criminal charge in either state or federal court related to a crime punishable by imprisonment for more than one year?

15. Have you ever been convicted of a felony in either a state court or a federal court of record for which you have not been granted a pardon?

16. Are you a member of the United States military in active service?

17. Are you a public officer actively engaged in the performance of official duties in the executive, legislative, or judicial branch of the United States or of any state, district, territory, possession, or subdivision of a state?

18. The attorneys estimate that this case is going to take between 4 and 5 business days to complete. Is there any reason that it would be impossible for you to serve as a juror for that period of time?

19. Is there any reason why you do not think that you would be able to listen objectively to the facts presented by the witnesses and apply the law as instructed by the judge to arrive at a fair and unbiased judgment?

20. If the judge instructed you on the law applicable to this case at the close of the evidence, would you consider yourself bound by that instruction even if you disagreed with some of the principles of a law? Please explain your feelings if you would not consider yourself bound.

21. This is a civil case, not a criminal case. As a result, during trial I will instruct you that the burden of proof in this case is different from the burden of proof in a criminal case. Instead of having to prove that the defendant is guilty beyond a reasonable doubt, as the government must do in a criminal case, the party bringing a claim in a civil case, such as this, need only prove its case by a preponderance of the evidence; in other words, the claimant will have to prove that it is more likely than not that the other party is liable for the claims and damages alleged here. Do you have any reason to believe that you will have difficulty understanding or following this instruction or will otherwise be unable to apply it?

# ATTACHMENT B-1

**The general questions which Plaintiff Subscriber Holdings, LLC's wishes to be propounded to the jurors on voir dire examination.**

## I.    Personal Background

1.    What is your age?
2.    What is the highest level of education you have attained?
3.    Do you own or rent your home?
4.    Do you have any education, training or work experience in the legal or law enforcement fields?
5.    Have you, or any member of your family, ever worked for a mobile phone manufacturer such as Apple or Samsung?
6.    Have you, or any member of your family, ever worked for mobile service provider such as Verizon, Sprint, or T-Mobile?
7.    Are you single, married, separated, divorced or widowed?
8.    Have you lived in the Atlanta area for the past ten (10) years?  If not, where did you live previously?
9.    Do you ever watch television shows involving legal issues, such as where the main characters are police and attorneys?  If so, which shows?
10.    How do you spend your time when you're not working?
11.    Have you, or any member of your family, ever started or launched your own business?  If so, what was the nature of the business and is it still operating?
12.    Have you, or any member of your family, ever worked for a startup company? If so, what was the nature of the business, is it still operating, and, if still operating, are you or the member of your family still working there?
13.    Do you have any children?  If so, how many and what are their ages?
14.    Have you ever purchased a mobile phone for one of your children?  If so, when?

## II.    Legal Actions

15.    Have you ever served on a jury before?  If so, when?  What was the nature of the case, criminal or civil?  Did the case reach a verdict?  What was the verdict (if you recall)?
16.    Have you, or any member of your family, ever been a party to a lawsuit?  If so, please state: (a) the parties, (b) nature of the dispute, (c) whether you/family member were plaintiff, defendant or something else, (d) whether you/family member were represented by an attorney, (e) how the case was resolved, (f) whether you were satisfied with the outcome, and (g) whether anything occurred to cause you to be dissatisfied with our justice system.
17.    Have you ever testified in court as a witness?  If so, please state: (a) the parties, and (b) nature of the dispute.
18.    Have you ever testified at a deposition as a witness?  If so, please state: (a) the parties, and (b) nature of the dispute.
19.    Do you have any lawyers in your family?

20.    Have you, or any member of your family, ever been affected by a lawsuit to which you were not a party?  If so, please state: (a) the parties, and (b) nature of the dispute.

## III.    Job

21.    Did you grow up in the Atlanta area?  If not, did you move here for a job?
22.    About how many different companies have you worked for in your working life?
23.    Do you use a mobile phone for work purposes?  If so, do you pay for that phone, or does your employer pay for it?
24.    Have you ever had a job where you interacted with attorneys, or dealt with attorneys frequently?  If so, what were those jobs?

## IV.    Trade Secrets

25.    Do you know what a trade secret is?
26.    Do you have any personal knowledge or experience with trade secrets? If so, what experience?
27.    Have you, or anyone in your immediate family, ever applied for a patent, trademark, or copyright? If so, what was the subject?
28.    Do you or does your employer rely on trade secret information as part of its business?
29.    Have you ever had an idea taken from you by someone else and used without your express permission? If so, please state: (a) when this happened; (b) nature of the dispute; and (c) how did you resolve the issue.
30.    Have you ever been accused of taking an idea from someone else and using without his or her express permission? If so please state: (a) when this happened; (b) nature of the dispute; and (c) how did you resolve the issue.

## V.    Contracts

31.    Have you ever signed a binding legal agreement. If so, what kinds of legal agreements?
32.    Have you ever negotiated the terms of an agreement? If so, what kinds of agreements?
33.    Have you ever been accused of breaching an agreement that you have signed? If so, please explain the nature of the dispute.
34.    Have you ever accused someone else of breaching an agreement that he or she signed? If so, please explain the nature of the dispute.

## VI.    Cellular/Mobile Phones

35.    Do you own a mobile phone? If so, what carrier is your plan with?
36.    Have you used other carriers in the past? If so, which ones?
37.    Have you ever purchased mobile phone insurance?  If so, please explain why.
38.    Have you ever upgraded your mobile phone during the middle of a contract term? If so, please state for each instance: (a) which carrier was it; (b) when you upgraded your phone; and (c) what was your experience when attempting to

upgrade your phone.

39.    Did you purchase or use a cell phone prior to 2012?  If so, please state: (a) your carrier, (b) whether or not you paid for the phone in one lump sum, or in monthly installments, and (c) whether you sought to upgrade your phone with monthly installments still left to pay on your phone.

40.    Did you purchase or use a cell phone between 2012-2014?  If so, please state: (a) your carrier, (b) whether or not you paid for the phone in one lump sum, or in monthly installments, and (c) whether you sought to upgrade your phone with monthly installments still left to pay on your phone.

## ATTACHMENT B-2

**The general questions which Defendants wish to be propounded to the jurors on voir dire examination.**

1. Have you, a family member, or someone close to you ever purchased products or services offered by any of the parties?

2. Have you, a family member, or someone close to you ever formed or expressed an opinion about any of the parties, whether based on something you read or heard or an experience you had?

3. Have you, a family member, or someone close to you ever worked for a mobile phone manufacturer or service provider, like:

      a. Apple;

      b. Samsung;

      c. Verizon;

      d. AT&T;

      e. T-Mobile; or

      f. Sprint;

4. Do you have any strong feelings – positive or negative – about mobile phone manufacturers or service providers?

5. Have you ever paid for insurance on or related to your mobile phone?

6. Have you, a family member, or someone close to you ever been accused of breaching a contract?

7. Have you, a family member, or someone close to you ever accused someone of breaching a contract?

8. Have you, a family member, or someone close to you ever had a trade secret?

9. Have you, a family member, or someone close to you, or an employer ever been involved in a dispute about trade secret rights?

10. Have you, a family member, or someone close to you, or an employer ever applied for, or obtained a patent, copyright, or trademark?

11. Have you, a family member, or someone close to you, or an employer ever been involved in a dispute about patent, copyright, or trademark rights?

12. Have you, a family member, or someone close to you ever pitched or tried to sell an idea or invention to someone else?

13. Have you, a family member, or someone close to you had any experience with licensing or royalty agreements for intellectual property, such as trade secrets, patents, copyrights, or trademarks?

14. Have you, a family member, or someone close to you ever been approached by someone pitching or trying to sell you an idea or invention?

15. Do any of you have any opinions about trade secret rights or other intellectual property rights that might make it difficult for you to be a fair and impartial juror in this case?

16. Have you, a family member, or anyone close to you ever accused someone

of taking their idea without permission?

17. Have you, a family member, or anyone close to you ever been accused of taking someone else's idea without permission?

18. Do you or anyone close to you have experience, education, or training involving any of the following fields:

      a. Law or the legal profession;

      b. Intellectual property;

      c. Engineering;

      d. Sales/Marketing;

      e. Mobile phone sales;

      f. Mobile phone insurance;

      g. Mobile phone service providers, like Verizon, AT&T, T-Mobile, or Sprint.

19. If you are selected to sit as a juror in this case, are you aware of any reason why you would be unable to render a fair verdict based solely on the evidence presented at trial and the Court's legal instructions?

20. Does anyone know of something you haven't been asked that is relevant to whether or not you can serve as a juror in this case that you would like to discuss with counsel in private?

# ATTACHMENT C

**Plaintiff Subscriber Holdings, LLC's outline of the case.**

**(a)**     **A succinct factual statement of plaintiff's cause of action which shall be neither argumentative nor recite evidence.**

Subscriber Holdings, LLC ("Subscriber") created the Subscriber Assurance Program, which Subscriber disclosed in three documents: a 1st program guide, a 2nd program guide, and a pricing guide (collectively, the "SAP"). The SAP taught, among other things, early upgrades for wireless devices made possible through a risk management component (i.e. insurance, assurance, or risk-based pricing). Specifically, the 2nd program guide contained Subscriber's trade secrets and proprietary information, including describing early upgrade programs. The 2nd program guide describes a method for a user to upgrade his/her device prematurely or out-of-cycle, prior to the end of the then-standard two-year wireless contract, with the risk management component securing the wireless carrier's investment. Throughout the SAP, the closely-held trade secret describes early, out-of-cycle upgrades using insurance, assurance, or other risk management components.

In August 2012, Mr. Woodward contacted Brightstar Device Protection, LLC f/k/a eSecuritel Holdings, LLC's ("Brightstar") to pitch the Subscriber Assurance Program. Brightstar subsequently entered into a non-disclosure and confidentiality agreement with Subscriber executed on September 11, 2012 (the "NDA"). The NDA limited the use of the confidential information to the purpose of establishing a business relationship between the parties and also limited disclosure to those within the recipient organization "having a need to know such information in order to evaluate the business relationship with Discloser and [recipient] shall not disclose Confidential Information to any other party (whether an individual, corporation, or other entity) without prior written consent of Discloser."

After execution of the NDA, Subscriber transmitted the SAP to Brightstar. Brightstar conveyed to Mr. Woodward that the SAP would be discussed during Brightstar's next executive committee meeting, as a potential program for launch in 2013. Sometime in mid-October of that year, Brightstar abruptly changed course and informed Mr. Woodward that Brightstar was "going in a different direction" and would not be further exploring the Subscriber Assurance Program.

Brightstar breached the NDA and misappropriated Subscriber's trade secrets under Georgia and Federal law. Brightstar disseminated the SAP to its customers and others without Subscriber's permission or authority, improperly used and/or disclosed trade secret information in connection with early upgrade programs, and misappropriated Subscriber's confidential and proprietary information that was not available outside of Subscriber, all without Subscriber's consent. Specifically Subscriber Holdings contends defendants Brightstar Corp, Brightstar Device Protection, LLC,—f/k/a eSecuritel Holdings, LLC—Brightstar RE LTD,—f/k/a eSecuritel RE LTD—and Brightstar US Inc. had access to, used, or disclosed the alleged trade secret.

**(b)      A separate listing of all rules, regulations, statutes, ordinances, and illustrative case law creating a specific legal duty relied upon by plaintiff.**

Count One of the Second Amended Complaint ("SAC") is governed by the Defend Trade Secrets Act, as set forth in 18 U.S.C. § 1836 (the "DTSA"). Provisions related to the scope of the DTSA and its definitions are contained in 18 U.S.C. § 1836, *et. seq.* and interpretive case law. Provisions related to the applicable remedies and recoverable damages are contained in 18 U.S.C. § 1836, *et. seq.* and interpretive case law. Illustrative case law includes *Compulife Software Inc. v. Newman*, 959 F.3d 1288 (11th Cir. 2020); *Northstar Healthcare Consulting, LLC v. Magellan Health, Inc.*, No. 1:17-CV-1071-ODE, 2019 WL 4805558 (N.D. Ga. July 10, 2019); and *Salsbury Labs., Inc. v. Merieux Labs., Inc.*, 735 F. Supp. 1555 (M.D. Ga. 1989), *aff'd as modified*, 908 F.2d 706 (11th Cir. 1990).

Count Two of the SAC is governed by the Georgia Trade Secrets Act, as set forth in Title 10, Chapter 1 of the Georgia Code (the "GTSA"). Provisions related to the scope of the GTSA and its definitions are contained in O.C.G.A. § 10-1-760 & 761 and interpretive case law. Provisions related to the applicable remedies and recoverable damages are set forth in O.C.G.A. § 10-1-762, 763 & 764 and interpretive case law. Illustrative case law includes *Penalty Kick Management Ltd. v. Coca Cola Co.*, 318 F.3d 1284 (11th Cir. 2003) and *Capital Asset Research Corp. v. Finnegan*, 160 F.3d 683 (11th Cir. 1998).

Count Three of SAC is governed by the terms and provisions of the NDA between Subscriber and eSecuritel Holdings LLC, entered into on September 11, 2012, and interpretive case law. The NDA is subject to interpretation under Georgia Law per Section 9 of the NDA.

**(c)    A separate listing of each and every act of negligence relied upon in negligence cases.**
N/A

**(d)    A separate statement for each item of damage claimed containing a brief description of the item of damage, dollar amount claimed, and citation to the law, rule, regulation, or any decision authorizing a recovery for that particular item of damage. Items of damage not identified in this manner shall not be recoverable.**

(i)    *Damages*

Subscriber is entitled to recover damages based upon the value that has been lost and/or the value of what has been gained by Defendants from their misappropriation of Subscriber's trade secrets and confidential information. *See* 35 U.S.C. § 1836 and O.C.G.A. § 10-1-763.

Recovery of a Defendant's "ill-gotten profits" is a proper measure of damages under the Georgia Trade Secrets Act (*see White v. Arthur Ents., Inc.*, 464 S.E.2d 225, 225-26 (Ga. Ct. App. 1995) (citing *Phoenix Airline Servs. v. Metro Airlines*, 390 S.E.2d 219 (Ga. Ct. App. 1989)), Defend Trade Secrets Act (*see Alabama Aircraft Industries, Inc. v. Boeing Company*, 133 F.4th 1238 (2025)), and breach of contract claims (*see Kansas v. Nebraska*, 135 S.Ct. 1042, 1056 (2015)) (citing Restatement (Third) of Restitution and Unjust Enrichment § 39(1) (2010)); *see also ATACS*

*Corp. v. Trans World Commc'ns, Inc.*, 155 F.3d 659, 669 (3d Cir. 1998)). Subscriber also has a

right to recover the damages related to the lost value of its asset – the exclusivity of the Subscriber

Assurance Program – as a result of Brightstar;s breaches of the Non-Disclosure Agreement. *See*

*Flourine On Call, Ltd. v. Fluorogas Ltd.*, 380 F.3d 849, 860-61 (5th Cir. 2004) (recognizing an

exclusive license as a "lost asset" recoverable in a breach of contract claim).

Defendants realized total incremental revenues directly attributable to the improper use and

dissemination of the misappropriated information is approximately $7.1 billion between October

2014 to July 2018. The incremental costs corresponding with the generation of these revenues

range from $6.8 billion to approximately $6.9 billion. Defendants' unjust enrichment directly

attributable to its alleged improper use and dissemination of the misappropriated information

ranges from approximately $114.6 million to approximately $282.0 million. This is summarized

in the table below:

| Summary Defendants' Alleged Unjust Enrichment Incremental Profits Attributable to the Misappropriated Information For the Period October 2014 through July 2018 | | |
|---|---|---|
| | **Low** | **High** |
| Lost Revenue | $ 7,052,302,699 | $ 7,052,302,699 |
| *Less:* Incremental Expenses | 6,937,691,645 | 6,770,294,067 |
| **Total Incremental Profits** | **$ 114,611,054** | **$ 282,008,632** |

In addition to these actual damages, Subscriber seeks exemplary damages under the Defend

Trade Secrets Act (18 U.S.C. § 1836) and the Georgia Trade Secrets Act (O.C.G.A. § 10-1-760).

*See* 18 U.S.C. § 1836(b)(3)(C) (providing exemplary damages in an amount not exceeding twice

any award of damages under the Defend Trade Secrets Act "if the trade secret is willfully and

maliciously misappropriated") and O.C.G.A. § 10-1-763 (providing exemplary damages in an

amount not exceeding twice any award of damages under the Georgia Trade Secrets Act "[i]f

willful and malicious misappropriation exists"). The exemplary amount on Defendants' damages ranges from approximately $229.2 million to approximately to $564 million.

      (ii)    *Attorneys' Fees and Costs*

Subscriber Holdings, LLC seeks attorneys' fees and costs which are recoverable under the Defend Trade Secrets Act, 18 U.S.C. § 1836(b)(3)(D), and the Georgia Trade Secrets Act, O.C.G.A. § 10-1-764. Subscriber Holdings, LLC fees and costs to date are approximately $1,900,000.

## ATTACHMENT D

Defendants hereby set forth a brief, succinct factual summary of their defenses, without citations to evidence or argument:

Brightstar has been a leader in the mobile phone buy-back and trade-in industry since long before Plaintiff claims to have conceived of its Subscriber Assurance Program, the purported trade secret at issue in this litigation. Through its buy-back and trade-in programs, Brightstar and its related entities have provided opportunities for people and businesses to trade-in used devices to recover the residual value of the device. Those used devices are then refurbished and resold into other markets or used to support device protection programs. Various Brightstar related entities have offered these programs since approximately 2000.

Brightstar Device Protection, previously eSecuritel, joined the Brightstar corporate family in 2011. Brightstar Device Protection offered insurance policies protecting against loss of or damage to devices, for example, a cracked screen. Brightstar Device Protection does not operate buy-back and trade-in programs. Nor has it (or any other Brightstar related entity) ever offered contract default insurance like that described in the Subscriber Assurance Program.

By early 2012, before Plaintiff contacted any Brightstar related entity, other Brightstar entities already had been marketing the idea of using buy-back and trade-

in programs in combination with insurance and early upgrade programs in order to offset the costs of new devices when upgraded early and to deflect the costs incurred in repairing or replacing damaged devices. Brightstar even had a name for the idea of combining buy-back and trade-in, insurance, and upgrade programs.  Brightstar called its idea the "Golden Triangle".

During this same timeframe, before Plaintiff approached Brightstar Device Protection, wireless service providers offered their customers early upgrades, before the end of their two-year service contracts, with varying terms, but usually between 18-22 months into the contract.  As noted, Brightstar's Golden Triangle program proposed to support these early upgrade programs by combining them with insurance and buy-back and trade-in services.

In or about August 2012, Subscriber Holdings' sole owner, Sean Woodward, reached out to Brightstar Device Protection to discuss a business proposal.  Mr. Woodward had a phone discussion with Brightstar Device Protection employee Clay Bodnarek, in which Mr. Woodward described the product as contract default insurance protecting cellular providers against the risk of end users breaching their wireless contract for enumerated "perils" such as loss of a job or divorce.  The proposed insurance would pay the wireless carrier for the contract breakage penalties as a result of the peril.

After internal discussion, Brightstar Corp. decided to take a "pass" on further discussions, but Brightstar Device Protection elected to enter into a two-year Non-Disclosure Agreement ("NDA") with Subscriber Holdings to learn more information about the proposal.  The NDA was executed on September 11, 2012.  Pursuant to the NDA, information exchanged would be used only for the purposes of a business relationship and internal discussion of the same.  However, there was no restriction on information which is or becomes a matter of public knowledge through no fault of the receiving party, and any restrictions expired on September 11, 2014, the second anniversary of the NDA.

After executing the NDA, Subscriber Holdings sent Mr. Bodnarek two documents, a power point presentation (the "First Program Guide") and a spreadsheet (the "Pricing Guide") outlining what Subscriber Holdings called the Subscriber Assurance Program.  Mr. Woodward discussed the materials with Mr. Bodnarek and another Brightstar Device Protection employee, Guru Kashyap, after which, Mr. Woodward prepared and sent them another power point presentation (the "Second Program Guide").

The Program Guides described the Subscriber Assurance Program as covering subscriber attrition (default) due to involuntary separation from employment, divorce, disability, miliary deployment, or death.  When a subscriber default occurs, Subscriber Assurance pays the wireless carrier full reimbursement for subsidized

device costs provided to the subscriber at the beginning of the wireless contract and all early termination fees required within the terms and conditions of the wireless contract. The Second Program Guide provides examples of how the Subscriber Assurance Program works, including when the subscriber wishes to use it for an out-of-cycle upgrade in a two-year wireless contract. In which case, the subscriber purchases the Subscriber Assurance product at the time of obtaining the new phone out-of-cycle, and extends its wireless contract for two years, with the Subscriber Assurance product protecting the wireless carrier recovering its subsidy and cancelation fees if the subscriber defaults during the new two-year term.

The Pricing Guide applies routine actuarial formulas to provide pricing guidance for the Subscriber Assurance Program based on the subscriber's credit score and the probability that the subscriber will default during the two-year term. Pricing in the Pricing Guide ranged from $58 to $198 per month.

Subscriber Holdings contends that the Subscriber Assurance Program described in the Program Guides and Pricing Guide constitute a trade secret that Subscriber Holdings owns.

Sometime during October 2012, Mr. Bodnarek informed Mr. Woodward that Brightstar Device Protection was going in a different direction and was not interested in pursuing the Subscriber Assurance Program. Subscriber Holdings never

attempted to bring the concept to market itself and never pitched it to any other party. Instead, Mr. Woodward took steps to monitor the activities of Mr. Bodnarek and Brightstar Device Protection, believing they would misappropriate his idea.

In July 2013, T-Mobile launched the JUMP! program which allowed subscribers to lease phones without a cellular service contract, and as a result, were able to upgrade their devices on a more frequent basis. Verizon, AT&T, and later Sprint followed suit soon thereafter, launching programs whereby the subscriber could lease or finance devices, return the device after a set period of time, and obtain a new device, separate from a service contract.

None of the Brightstar Entities worked with T-Mobile, AT&T, Verizon, or Sprint on these programs. Subscriber Holdings contends these programs "mirror" its Subscriber Assurance Program and changed the industry. Subscriber Holdings also contends these programs are evidence of the Brightstar Entities misappropriating its alleged trade secret.

Brightstar related entities continued business as usual after Brightstar Device Protection's interactions with Plaintiff. They continued offering buy-back and trade-in programs and Brightstar Device Protection continued offering device protection plans. Neither offered contract default insurance at any time, under any name. Nor did any other Brightstar related entity.

In June 2016, Subscriber Holdings had its attorney send a letter to Brightstar and Brightstar Device Protection alleging that they had misappropriated Subscriber Holdings' alleged trade secret by working with T-Mobile on the JUMP! program. Brightstar and Brightstar Device Protection responded through their attorney that they had not been involved in the T-Mobile JUMP! program and had not misappropriated any alleged trade secret. After months of continued discussion through counsel, Subscriber Holdings fell silent.

In April 2019, Mr. Woodward sent a draft complaint to Brightstar, Sprint, T-Mobile, and others. Attached to that draft complaint were slides from the Second Program Guide and the Pricing Guide that disclose the Subscriber Assurance Program, the purported trade secret at issue. Subscriber Holdings did not have a confidentiality agreement in place with any of the recipients when this communication was sent.

Subscriber Holdings ultimately filed its lawsuit on May 2, 2019.

Prior to any interaction with Brightstar Device Protection, in 2010, Mr. Woodward filed three patent applications relating to a loss mitigation product that would insure against a person unable to satisfy their lease obligations due to triggering events such as death, divorce, bankruptcy, or loss of a job. These patent

applications were published and accessible to the public before Mr. Woodward contacted Brightstar Device Protection.

The Pricing Guide utilized a spreadsheet with routine actuarial formulas developed by Gary Fagg.  Mr. Fagg also wrote multiple books, published in the 1980s and later, which described credit default insurance including its use to protect against consumers becoming unable to satisfy their payment obligations and underwriting for such insurance.

The only way for a person or entity using the Subscriber Assurance Program to benefit from the Subscriber Assurance Program is to disclose the details of the Subscriber Assurance Program. There is no value to the Subscriber Assurance Program if people do not know it exists, do not know how it works, and do not know its benefits.  Nonetheless, Subscriber Holdings has not identified any program offered to mobile device owners by anyone that included contract or credit default insurance.  Subscriber Holdings has not identified any instance of any defendant transmitting the Program Guides or Pricing Guide to any third party.

As a result of the above, defendants contend that Subscriber Holdings is unable to establish that it has a trade secret, including due to its own prior public disclosure through patent application publication and discussions prior to any NDA. The alleged trade secret is also a well-known product, contract default or credit

insurance, applied to the mobile device industry without offering any new or unknown benefits. Wireless carriers had offered consumers the ability to upgrade their device prior to the conclusion of a service contract before Subscriber Holdings contacted Brightstar Device Protection, and Subscriber Holdings did not invent such concept.

To the extent Subscriber Holdings seeks to hold defendants liable for offering and providing buy-back and trade-in programs and/or device protection insurance, defendants provided these services for years prior to interacting with Subscriber Holdings. Additionally, Brightstar even marketed its idea of combining buy-back and trade-in services with device protection insurance to support carriers' ability to offer end users early upgrades, e.g., the Brightstar's Golden Triangle idea.

None of the defendants used or disclosed Subscriber Holdings' materials or the concepts disclosed therein. None of the defendants were involved in or related to the T-Mobile JUMP! program or similar programs in the summer of 2013 which Subscriber Holdings contends mirrored its trade secret. Brightstar Corp. and Brightstar Device Protection informed Subscriber Holdings as much in 2016, years prior to Subscriber Holdings filing the instant lawsuit.

Based on Subscriber Holdings' allegations of the market and the impact of the alleged misappropriation thereon, it knew or should have known of its claim at least

as of July 2013. As a result, its claims are barred by the applicable statute of limitations. The claims are further barred by laches as a result of Subscriber Holdings' delay combined with the loss of access to information including separation of employees with knowledge and the loss of materials and employees from relevant third parties such as T-Mobile.

Any restrictions on Brightstar Device Protection's use of the Subscriber Assurance materials expired, at the latest, in September 2014 as a result of the two-year term of the NDA. However, no restrictions applied to information Brightstar Device Protection already knew at the time of the NDA or after any content was publicly known through no fault of Brightstar Device Protection.

Subscriber Holdings does not contend defendants Brightstar Re Ltd or Brightstar US, LLC had access to, used, or disclosed the alleged trade secret.

Accordingly, and as further supported by the illustrative legal citations below, Subscriber Holdings' claims fail and judgment should be entered in favor of defendants.

**Illustrative Rules, Regulations, Statutes, Ordinances, and Case law:**
**Trade secret law (federal and state):**
- O.C.G.A. § 10-1-760 *et seq*.;
- *Diamond Power Int'l, Inc. v. Davidson*, 540 F.Supp.2d 1322 (N.D. Ga.

2007);

- *Essex Grp., Inc. v. Southwire Co.*, <u>501 S.E.2d 501</u> (Ga. 1998);

- *State Road & Tollway Authority v. Electronic Transaction Consultants Corp.*, <u>702 S.E.2d 486</u> (Ga. Ct. App. 2010);

- *Capital Asset Research Crop. v. Finnegan*, <u>160 F.3d 683</u> (11th Cir. 1998);

- *Porex Corp. v. Haldopoulos*, <u>644 S.E.2d 349</u> (Ga. Ct. App. 2007);

- *Salsbury Labs, Inc. v. Merieux Labs, Inc.*, <u>735 F.Supp. 1555</u> (M.D. Ga. 1989);

- *Salsbury Labs., Inc. v. Merieux Labs, Inc.,* <u>908 F.2d 706</u> (11th Cir. 1990);

- *Purchasing Power, LLC v. Bluestream Brands, Inc.*, <u>22 F.Supp.3d 1305</u> (N.D. Ga. 2014);

- *Wilson v. Barton & Ludwig, Inc.*, <u>296 S.E.2d 74</u> (Ga. Ct. App. 1982);

- *Card Isle Corp. v. Farid*, <u>689 F.Supp.3d 1273</u> (N.D. Ga. 2023);

- *Penalty Kick Management Ltd. v. Coca Cola Co.*, <u>318 F.3d 1284</u> (11th Cir. 2003);

- <u>18 U.S.C. § 1836</u> *et seq.*;

- *Agilysys, Inc. v. Hall*, <u>258 F.Supp.3d 1331</u> (N.D. Ga. 2017);

- *CMI Roadbuilding, Inc. v. Iowa Parts, Inc.*, <u>920 F.3d 560</u> (8th Cir. 2019);

- *Adcor Indus., Inc. v. Bevcorp, LLC*, <u>411 F.Supp.2d 778</u> (N.D. Ohio 2005).

**Contract:**

- O.C.G.A. §13-2-3;

- O.C.G.A. § 13-6-5;

- *Int'l Biochemical Indus., Inc. v. Jamestown Mgmt Corp.*, 586 S.E.2d 442 (Ga. Ct. App. 2003);

- *Piedmont Arbors Condo. Ass'n, Inc. v. BPI Const. Co.*, 397 S.E.2d 611 (Ga. Ct. App. 1990);

- *Omnicomm Corp. v. AT&T Mobility, LLC*, Civ. No. 1-11-cv-4264-AT, , 2013 WL 12247764 (N.D. Ga. April 22, 2013).

**Statute of Limitations:**

- 18 U.S.C. § 1836(d);

- *Agilysys, Inc. v. Hall*, 258 F.Supp.3d 1331 (N.D. Ga. 2017);

- *CMI Roadbuilding, Inc. v. Iowa Parts, Inc.*, 920 F.3d 560 (8th Cir. 2019);

- *Moddha Interactive, Inc. v. Philips Elec. N. Am. Corp.*, 92 F.Supp.3d 982 (D.HI. 2015);

- *Brand Energy & Infrastructure Servs., Inc. v. Irex Contracting Group*, Civ. Action. No. 16-2499, 2017 WL 1105648 (E.D. Penn. March 24, 2017);

- *Syntel Sterling Best Shores Mautritius Ltd. v. Trizetto Group, Inc.*, 15-CV-211, 2016 WL 5338550 (S.D.N.Y. Sept. 23 2016);

- *Adams Arms, LLC v. Unified Weapon Sys., Inc.*, 8:16-CV-1503-&-33AEP,

2016 WL 5391394 (M.D. Fla. Sept. 27, 2016);

- O.C.G.A. § 10-1-766;

- *Porex Corp. v. Haldopoulos*, 644 S.E.2d 349 (Ga. Ct. App. 2007);

- *Fail-Safe LLC v. A.O. Smith Corp*., 744 F.Supp.2d 831 (E.D. Wis. 2010);

- *Allmond v. Young*, 723 S.E. 2d 691 (Ga. Ct. App. 2012).

**Laches:**

- O.C.G.A. § 9-3-3;

- *Cagle v. Cagle*, 586 S.E.2d 665 (Ga. 2003);

- *Stone v. Williams*, 458 S.E.2d 343 (Ga. 1995).

## ATTACHMENT E

**The facts stipulated by the parties.**

1.      Defendants entered into a confidentiality agreement with Plaintiff executed on September 11, 2012 (the "NDA").

2.      Per the NDA, "[e]ach parties' obligations hereunder shall expire on the second anniversary of the last date written below the signatures to this Agreement."

3.      The parties' obligations under the NDA expired on September 11, 2014.

4.      Plaintiff transmitted the Subscriber Assurance Program Guide ("SAP 1") and the Subscriber Assurance Pricing Guide ("Pricing Guide") to Clayton ("Clay") Bodnarek on September 13, 2012.

5.      On September 28, 2012, Plaintiff transmitted the Second Subscriber Assurance Program Guide ("SAP 2") to Mr. Bodnarek.

6.      Subscriber Holdings contends its alleged trade secret is the Subscriber Assurance Program (the "SAP") contained in the SAP 1, SAP 2, and Pricing Guide.

# ATTACHMENT F-1

**Plaintiff Subscriber Holdings, LLC's list of all the witnesses and their addresses.**

**WILL CALL**

Sean Woodward
Managing Member
Subscriber Holdings, LLC
201 17th Street
Atlanta, GA 30363

Clay Bodnarek
5355 Fairmount Gln
Alpharetta, GA 30004

Cameron Sowder, MS, DBA
SowderCom
710 Copper Creek Circle
Milton, GA 30004

Justin Blok, MBA, CFE, CLP
Whiley Penn LLP
3737 Buffalo Speedway
Suite 1600
Houston, TX 77098-3747

Gregory Tibbles
Likewise Corporation
43 Oaklands Avenue
Birmingham, B17 9TU

# ATTACHMENT F-2

**Defendants' list of all the witnesses and their addresses.**

**WILL CALL:**

- None.

**MAY CALL:**

- **Sean Woodward / Subscriber Holdings, LLC**, c/o Edward Behm, Saul Ewing LLP, 1500 Market Street, Philadelphia, PA 19102.

- **Clay Bodnarek**, c/o Eric K. Smith, Esq., EKS Law, P.C., 1735 Buford Highway, Suite 215-238, Cumming, Georgia 30040;

- **Greg Tibbles**, c/o Mark Durbin, Esq., Barnes & Thornburg LLP, One N. Wacker Drive, Suite 4400, Chicago, Illinois 60606-2833;
  - A summary of Mr. Tibbles' anticipated testimony, including certain testimony that might qualify as opinion or expert testimony pursuant to FRE 701 and 702 is included within the disclosures attached hereto as Exhibit F-2-A;

- **Ross Hickman**, GlassRatner, 2445 Peachtree Road, NE, Suite 1225, Atlanta, Georgia 30326;
  - A summary of Mr. Hickman's anticipated testimony pursuant to Rule 702 is included within the disclosures attached hereto as Exhibit F-2-B;

- **Cameron Sowder,** SowderCom, 710 Copper Creek Circle, Milton, Georgia 3004;

   o A summary of Mr. Sowder's anticipated testimony pursuant to Rule 702 is included in the attachment hereto as Exhibit F-2-C;

- **Jennifer Taylor**, 5510 Hedge Brook Dr., Cummings, Georgia 30028;

- **Guru Kashyap**, 2449 Manor Walk, Decatur, Georgia 30030;

- **Stephen Bracy**, Asurion LLC, 1101 Church Street, Nashville, TN 38103;

- **A. Shane Nichols**, McDermott Will & Emery LLP, 1180 Peachtree Street NE, Suite 3500, Atlanta, Georgia 30309.

## ATTACHMENT F-1-A

**Defendants' objections, if any, to Plaintiff's witness list.**

**Defendants do not object to Plaintiff's witness list except as set forth in the contemporaneously filed motions to exclude.**

**ATTACHMENT F-2-A**

**Plaintiff Subscriber Holdings, LLC's objections, if any, to Defendants' witness list.**

**Plaintiff objects to Greg Tibbles being proffered as an "expert" rebuttal witness under the guise of a hybrid witness. Plaintiff has concurrently filed a corresponding *Motion in Limine to Exclude or Limit Testimony of Gregory Tibbles as a Rule 26(a)(2)(C) Witness*.**

# ATTACHMENT G-1

**Plaintiff Subscriber Holdings, LLC's list of all documentary and physical evidence that will be tendered at trial.**

| Trial Ex. No. | Bates Begin | Bates End | Plaintiff's Description |
|---|---|---|---|
| PX_001 | BDP00000316 | BDP00000318 | Email from Woodward re: scheduling |
| PX_002 | BDP00000275 | BDP00000277 | Email from Bodnarek re: scheduling |
| PX_003 | BDP00000272 | BDP00000274 | Email from Woodward re: scheduling |
| PX_004 | BDP00000259 | BDP00000261 | Calendar Event for Woodward meeting |
| PX_005 | BDP00000033 | BDP00000035 | Email from Bodnerak re: Woodward |
| PX_006 | BDP00000153 | BDP00000157 | Email from Bodnarek re: follow-up |
| PX_007 | BDP00000311 | BDP00000315 | Email from Woodward re: follow-up |
| PX_008 | BDP00000067 | BDP00000069 | Email from Bodnarek re: follow-up |
| PX_009 | BDP00000084 | BDP00000087 | Email from Bodnarek re: follow-up |
| PX_010 | BDP00000088 | BDP00000090 | Email from Ghelman re: Follow-up |
| PX_011 | BDP00000004 | BDP00000007 | Email from Bodnarek re: Opportunity |
| PX_012 | BDP00002480 | BDP00002482 | Email from Taylor re: Opportunity |
| PX_013 | BDP00000075 | BDP00000079 | Email from Bodnarek re: Opportunity |
| PX_014 | BDP00000091 | BDP00000095 | Email from Bodnarek re: Opportunity |
| PX_015 | BDP00000295 | BDP00000301 | Email from Bodnarek re: Opportunity |
| PX_016 | BDP00000280 | BDP00000284 | Email from Woodward re: follow-up |
| PX_017 | BDP00000036 | BDP00000041 | Email from Bodnarek re: Opportunity |
| PX_018 | BDP00000042 | BDP00000043 | eSecuritel Confidentiality Agreement |
| PX_019 | BDP00000319 | BDP00000325 | Email from Woodward re: Confidentiality Agreement |
| PX_020 | BDP00000046 | BDP00000047 | Email from Woodward re: SAP Materials |
| PX_021 | BDP00000096 | BDP00000097 | eSecuritel Confidentiality Agreement |
| PX_022 | BDP00000285 | BDP00000292 | Email from Woodward re: Confidentiality Agreement |
| PX_023 | BDP00000293 | BDP00000294 | eSecuritel Confidentiality Agreement |
| PX_024 | BDP00000302 | BDP00000303 | Email from Woodward re: follow-up |
| PX_025 | BDP00000143 | BDP00000144 | Email from Bodnarek re: meeting |
| PX_026 | BDP00000044 | BDP00000045 | Email from Bodnarek re: meeting |
| PX_027 | BDP00000064 | BDP00000066 | Email from Woodward re: meeting |
| PX_028 | BDP00000309 | BDP00000310 | Email from Woodward re: Sample Program |

| PX_029 | BDP00000131 | BDP00000133 | Email from Woodward re: Program Guide |
| PX_030 | BDP00000123 | BDP00000126 | Email from Bodnarek re: Program Guide |
| PX_031 | BDP00000134 | BDP00000134 | Email from Schrier re: Program Guide |
| PX_032 | BDP00000264 | BDP00000267 | Email from Rouse re: follow-up |
| PX_033 | BDP00000304 | BDP00000308 | Email from Rouse re: follow-up |
| PX_034 | BPD00002050 TYPO | BDP00002075 | Presentation re: Buy-Back & Trade-IN |
| PX_035 | BDP00002483 | BDP00002483 | Email from Taylor re: T-Mobile |
| PX_036 | BDP00002487 | BDP00002490 | Email from Kashyap re: Integrated Services |
| PX_037 | BDP00000049 | BDP00000063 | SAP 1 |
| PX_038 | BDP00001966 | BDP00002017 | Presentation re: Sales Channel Outlook |
| PX_039 | BDP00002380 | BDP00002380 | LIKEWISE P&L 2011-2016 (Native xls) |
| PX_040 | BDP00002381 | BDP00002381 | Larger Financial Sheet (Native xls) |
| PX_041 | BDP00002382 | BDP00002382 | Brightstar P&L 2011 (Native xls) |
| PX_042 | BDP00000135 | BDP00000135 | Letter re: Follow-up |
| PX_043 | BDP00002394 | BDP00002395 | |
| PX_044 | BDP00000632 | BDP00000731 | Agreement between Sprint and eSecuritel |
| PX_045 | BDP00000970 | BDP00000977 | Agreement between Sprint and eSecuritel |
| PX_046 | BDP00001320 | BDP00001391 | Agreement between Sprint and Brightstar |
| PX_047 | BDP00002250 | BDP00002267 | Agreement between T-Mobile and Brightstar |
| PX_048 | BDP00002336 | BDP00002348 | Agreement between T-Mobile and Brightstar |
| PX_049 | BDP00002349 | BDP00002362 | Agreement between T-Mobile and Brightstar |
| PX_050 | BDP00002363 | BDP00002379 | Agreement between Apple and Brightstar |
| PX_051 | BDP00001812 | BDP00001916 | Brighstar presentation to Telstra |
| PX_052 | BDP0000048 | | Pricing Guide (native) |
| PX_053 | MLS000493 | MLS000573 | Agreement bewteen MLS and Sprint |
| PX_054 | MLS000639 | MLS000718 | Agreement bewteen MLS and Sprint |
| PX_055 | MLS000901 | MLS000949 | Agreement bewteen MLS and Brightstar |

| PX_056 | MLS001228 | MLS001296 | Agreement bewteen MLS and Sprint |
| PX_057 | MLS001297 | MLS001313 | Agreement bewteen MLS and Hon Hai Precision |
| PX_058 | TMOSUBH0032 | TMOSUBH0067 | Agreement between Sprint and Brightstar |
| PX_059 | TMOSUBH0102 | TMOSUBH0173 | Agreement between Sprint and Brightstar |
| PX_060 | TMOSUBH0182 | TMOSUBH0184 | JUMP Program T&C |
| PX_061 | TMOSUBH0001 | TMOSUBH0029 | Agreement between Sprint and Brightstar |
| PX_062 | TMOSUBH0030 | TMOSUBH0031 | Agreement between Sprint and Brightstar |
| PX_063 | TMOSUBH0068 | TMOSUBH0070 | Agreement between Sprint and Brightstar |
| PX_064 | TMOSUBH0071 | TMOSUBH0093 | Agreement between Sprint and Brightstar |
| PX_065 | TMOSUBH0094 | TMOSUBH0099 | Customer change form |
| PX_066 | TMOSUBH0100 | TMOSUBH0101 | Agreement between Sprint and Brightstar |
| PX_067 | TMOSUBH0174 | TMOSUBH0181 | Agreement between T-Mobile and Brightstar |
| PX_068 | SUB0000412 | SUB0000431 | Global Expo Pamphlet |
| PX_069 | SUB0002383 | SUB0002383 | Article re: subsidies |
| PX_070 | SUB0002684 | SUB0002687 | Article re: WMC 2017 |
| PX_071 | SUB0002598 | SUB0002683 | Presentation re: Brightstar Flex |
| PX_072 | SUB0000167 2 pages of a larger doc at DX_001 | SUB0000168 | Letter to eSecuritel |
| PX_073 | SUB0001466 | SUB0001468 | Article re: iPhone |
| PX_074 | SUB0001427 | SUB0001444 | Article re: Cell Phone Insurance |
| PX_075 | SUB0001692 | SUB0001696 | Article re: Ugrade Programs |
| PX_076 | SUB0006532 | SUB0006534 | Article re: Ugrade Programs |
| PX_077 | SUB0001470 | SUB0001472 | Article re: Ugrade Programs |
| PX_078 | SUB0001683 | SUB0001683 | Article re: Ugrade Programs |
| PX_079 | SUB0001425 | SUB0001426 | Article re: T-Mobile |
| PX_080 | SUB0001455 | SUB0001461 | Article re: Trade-in Programs |
| PX_081 | SUB0006631 | SUB0006633 | Article re: Ugrade Programs |
| PX_082 | SUB0001560 | SUB0001567 | Article re: Ugrade Programs |
| PX_083 | SUB0006419 | | Native doc |

| PX_084 | | | Expert Report of Justin Blok, October 31, 2024 and Exhibits |
| PX_085 | | | Expert Report of Cameron Sowder, October 31, 2024 and Exhibits |
| PX_086 | | | Exhibit 36 to Tibbles Deposition September 17, 2024 |
| PX_087 | | | Any documents listed or used as exhibits by Defendants |
| PX_088 | | | Screen Capture of www.likewize.com pages |

# ATTACHMENT G-2

# Defendants' list of all documentary and physical evidence that may be tendered at trial.

| Trial Ex. No. | Bates Begin | Bates End | Defendant's Description |
|---|---|---|---|
| DX_001 | SUB0000167 | SUB0000205 | |
| DX_002 | SUB0000166 | | 4/2/2019 Email from S. Woodward to defendants |
| DX_003 | BDP00001810 | BDP0001965 | 5/18/2012 Email from R. Jimison to C. Bodnarek et al re Sales team on Jira |
| DX_004 | | | Depo. Ex. 44 - 9/18/2020 Subscriber Holdings, LLC - Subscriber Assurance Program for Attrition Only (Pricing guide in its entirety with actual content in the program guide) |
| DX_005 | BDP00000136 | BDP00000139 | 8/20/2016 Neal Weinrich letter |
| DX_006 | BDP00000141 | BDP00000142 | 10/19/2016 Neal Weinrich letter |
| DX_007 | BDP00000249 | BDP00000250 | 11/23/2016 A. Shane Nichols letter |
| DX_008 | BDP00000245 | BDP00000248 | 6/23/2016 Neal Weinrich letter |
| DX_009 | BDP00000251 | BDP00000252 | 7/8/2016 A. Shane Nichols letter |
| DX_010 | BDP00000253 | BDP00000254 | 9/6/2016 A. Shane Nichols letter |
| DX_011 | BDP00000257 | BDP00000258 | 9/11/2012 Event: Call to discuss "Contract Breakage" Insurance Product - Does this time work? |
| DX_012 | BDP00000262 | | 2/10/2014 Clayton, please add me to your LinkedIn network |
| DX_013 | BDP00000263 | | 5/30/2012 Clayton, please add me to your LinkedIn network |
| DX_014 | BDP00001562 | BDP00001563 | 7/16/2013 FW: Rent-to-owns models by AT&T and VZW launched yesterday |
| DX_015 | BDP00002035 | BDP0002049 | Leasing - Market Research |
| DX_016 | BDP00002095 | BDP0002098 | 7/16/2013 FW: AT&T's 'Next' Plan Offers A New Smartphone Every 12 Months, With Some Strings |
| DX_017 | BDP00002099 | BDP00002101 | 7/15/2013 FW: How JUMP upgrade program from T-Mobile works |
| DX_018 | BDP00002119 | BDP00002120 | 7/15/2013 FW: take a look at T-Mobile upgrade plan with handset insurance |
| DX_019 | BDP00002205 | BDP00002249 | 7/26/2013 eSecuritel Handset Leasing - for SK Telecom |
| DX_020 | BDP00002429 | BDP00002432 | 1/23/2014 RE: Prep Meeting for CCA Session - Innovative Customer Acquisition and Upgrade Models - Notes from Today |
| DX_021 | BDP00002433 | BDP00002452 | CCA Global Expo |
| DX_022 | BDP00002453 | | 9/16/2013 2YR Samsung GS4 Comparison |

| DX_023 | BDP00002770 |             | 5/16/2014 RE: CCA Nomination |
|--------|-------------|-------------|------------------------------|
| DX_024 | BDP00002771 |             | 5/16/2014 redline to Clay nomination |
| DX_025 | BDP00002477 |             | 5/16/2014 Event: Nomination for CCA - Does this time work for you? |
| DX_026 | BDP00002627 |             | 3/27/2014 final final |
| DX_027 | BDP00002628 | BDP00002639 | 3/27/2014 CCA Session 203: Innovative customer acquisition and upgrade models |
| DX_028 | BDP00002647 |             | 7/25/2014 Re: CCA Follow-up Evaluations from San Antonio |
| DX_029 | BDP00002658 |             | 10/8/2015 Announcing the 2015 Neko Hamlett Associate Member of the Year!! |
| DX_030 | BDP00002731 |             | 2/28/2014 Session 203 - Casey Clement, Presentation |
| DX_031 | BDP00002732 | BDP00002740 | Innovative Customer Acquisition and Upgrade Models Handset Installment & Early Upgrades |
| DX_032 | BDP00003268 | BDP00003271 | 7/5/2011 Article: Brightstar Announces Acquisition of Majority Interest in Flipswap Services, LLC |
| DX_033 |             |             | Depo. Ex. 38 - 6/7/2016 Newsroom Press Release Article |
| DX_034 | BDP00000338 | BDP00000347 | T-Mobile JUMP! Terms and Conditions |
| DX_035 | BDP00000356 | BDP00000408 | 9/23/2010 Patent Application No. US 2010/0241460 A1 |
| DX_036 | BDP00000409 | BDP00000461 | 9/23/2010 Patent Application No. US 2010/0241461 A1 |
| DX_037 | BDP00000462 | BDP00000514 | 9/23/2010 Patent Application No. US 2010/0241462 A1 |
| DX_038 | BDP00000611 | BDP00000614 | 11/23/2010 https://www.iphoneincanada.ca/2011/03/07/telus-enables-earlier-renewals-withanytime-upgrades/ |
| DX_039 | BDP00000615 | BDP00000617 | 3/7/2011 https://www.telus.com/en/bc/business/support/article/mobility-service-terms |
| DX_040 | BDP00000618 | BDP00000620 | 4/7/2011 https://www.iphoneincanada.ca/2011/03/07/telus-enables-earlier-renewals-withanytime-upgrades/ |
| DX_041 | BDP00000621 | BDP00000628 | 4/28/2011 https://www.iphoneincanada.ca/2011/04/07/rogers-to-launch-early-upgrade-fee/ |
| DX_042 | BDP00000630 | BDP00000631 | 2/8/2013 Metrofone Upgrade FAQ portion of of the website as of February 8, 2013, as viewed through the Wayback Machine |
| DX_043 | BDP00000329 | BDP00000330 | 7/18/2013 Article: Comparing device upgrade plans: AT&T vs Verizon vs T-Mobile |

| DX_044 | BDP00000354 | BDP00000355 | 8/14/2020 Article: Why AT&T's 'Next' devise upgrade program is a bad deal |
|---|---|---|---|
| DX_045 | BDP00002085 | BDP00002086 | 8/2/2011 Article: O2 'Fast Tracks' upgrading customers - Virgin Media O2 |
| DX_046 | BDP00002090 | BDP00002093 | final-o2r13740n-phone-plan-cca-tcs-device-plan-update-8-may-2014 |
| DX_047 | BDP00002094 | BDP00002094 | 8/27/2016 O2 Refresh - Launch TV advert.mp4 |
| DX_048 | BDP00000348 | BDP00000349 | 8/14/2020 Article: Verizon Edge Device Payment and Early Upgrade Plan |
| DX_049 | BDP00000350 | BDP00000353 | 8/14/2020 Article: Verizon Edge early uipgrade program officially unveiled, will begin August 25th |
| DX_050 | BDP00002142 | BDP00002152 | 4/22/2011 Article: Telecom Subscription Fraud - Transact with Confidence |
| DX_051 | BDP00003258 | BDP00003261 | Article: Anywhere Upgrades - Mobility Service Terms |
| DX_052 | BDP00003262 | BDP00003264 | 6/7/2010 Article: Apple uveils iPhone 4 |
| DX_053 | BDP00003265 | BDP00003267 | 9/24/2012 Article: Brightstar Acquires Mobile Phone Xchange |
| DX_054 | BDP00002372 | BDP00002376 | 2/13/2009 Article: FlipSwap - Put Your Old Cell Phones to Good Use |
| DX_055 | BDP00003277 | BDP00003286 | 4/29/2011 Article: Study Finds Consumers Feel Stuck with Obsolete Smartphones |
| DX_056 | BDP00003287 | BDP00003298 | 12/11/2012 Article: It's Crazy to Pay $200 for Your Next iPhone.  You should pay $600! |
| DX_057 | BDP00003299 | BDP00003324 | 12/6/2012 Article: T-Mobile kills device subsidies |
| DX_058 | BDP00003325 | BDP00003355 | 6/7/2010 Article: The skinny on upgrading to the iPhone 4 (Q&A) |
| DX_059 | BDP00003356 | BDP00003376 | 8/31/2011 Trade-In Value Guarantee Opens a New marketing Approach for Lenders, Dealers, and Manufacturers |
| DX_060 | BDP00003377 | BDP00003396 | 2/1/2011 Trade-In Value: Is a Protections Policy the Answer? |
| DX_061 | BDP00003397 | BDP00003426 | 1/13/2011 Verizon ends 'New Every Two' program |
| DX_062 | BDP00003427 | BDP00003430 | 12/21/2010 Verizon iPhone won't be AT&T's doomsday |
| DX_063 | BDP00003431 | BDP00003433 | 1/13/2011 Verizon quietly scraps 'new every two' credit |
| DX_064 | BDP00003434 | BDP00003436 | 6/25/2010 Where old iPhones go to die |
| DX_065 | BDP00003437 | BDP00003444 | 11/15/2013 T-Mobile touts simplicity, but its new Jump! plan is designed to deceive |
| DX_066 | | | 2/3/2009 045_S17478918-web.archive.org_2024-10-30-14-54-50 Sprint launches premier program for insanely loyal customers and big spenders |

| DX_067 | | | 1/20/2011 048_S17478299-www.engadget.com_2024-10-30-06-59-05 Sprint premier getting new premium tier on April 1st, many customers won't get early upgrades? |
|---|---|---|---|
| DX_068 | | | 1/21/2011 049_S17479571-www.cnet.com_2024-10-30-16-46-43 Sprint changes premier handset program |
| DX_069 | | | 2/13/2012 052_S17479583-www.cnet.com_2024-10-30-16-48-32 Sprint 'Upgrade Now' program to offer prorated fees |
| DX_070 | | | 5/17/2012 055_S17478332-www.theverge.com_2024-10-30-07-26-04 Sprint ready to cancel early upgrade program June 1st |
| DX_071 | | | 12/28/2012 056_S17478339-pocketables.com_2024-10-30-07-32-11 Sprint has now canceled its early upgrade program |
| DX_072 | | | 9/20/2013 057_S17478341-9to5mac.com_2024-10-30-07-34-54 Sprint announces $65/month 'One Up' upgrade plan |
| DX_073 | | | 12/18/2008 066_S17479611-www.fierce-network.com_2024-10-30-16-53-37 T-Mobile USA cancels handset upgrade fees |
| DX_074 | | | 12/6/2012 070_S17479600-www.fierce-network.com_2024-10-30-16-51-59 T-Mobile kills device subsidies |
| DX_075 | | | 7/10/2013 073_S17478370-www.geekwire.com_2024-10-30-08-04-45 T-Mobile debuts 'Jump', lets you upgrade phone twice a year for $10/month |
| DX_076 | | | 10/5/2011 087_S17478384-osxdaily.com_2024-10-30-08-19-06 How to check iPhone 4S upgrade eligibility status on AT&T, Verizon and Sprint |
| DX_077 | | | 10/3/2010 110_S17478401-hothardware.com_2024-10-30-08-30-29 U.S. Cellular announces on-and-done contracts; the 'Belief Project' |
| DX_078 | | | iphone_eligibility_and_pricing-F1736410F Eligibility & Pricing for iPhone |
| DX_079 | | | 7/19/2013 S17804159-www.theverge.com_2024-12-12-16-18-50 Verizon, AT&T, Sprint, and T-Mobile: are ealry upgrade plans a good deal? |
| DX_080 | | | 7/18/2013 S17804321-www.cnet.com_2024-12-12-16-36-08 Verizon unveils Edge, its own pricey early upgrade plan |
| DX_081 | | | 2/13/2012 S17804336-www.cnet.com_2024-12-12-16-37-44 Sprint 'Upgrade Now' program to offer prorated fees |

| DX_082 | | | 12/28/2012 S17804336-www.cnet.com_2024-12-12-16-37-44 Sprint 'Upgrade Now' program to offer prorated fees |
|---|---|---|---|
| DX_083 | | | 9/1/2013 S17804354-9to5mac.com_2024-12-12-16-40-24 Sprint announces $65/month 'One Up' upgrade plans |
| DX_084 | | | 4/12/2013 S17804450-www.engadget.com_2024-12-12-16-50-38 Verizon changes upgrade cycle from 20 months to 24 months |
| DX_085 | | | 1/1/1998 Credit-Related Property and Casualty Insurance, by Gary Fagg and Joseph Fairchild, CreditRe Corporation, First Edition |
| DX_086 | | | 11/1/1992 Money on the Table, by Gary Fagg and John S. Mailho, CreditRe Corporation |
| DX_087 | | | 1/1/1986 Credit Life and Disability Insurance, by Gary Fagg, CLICO Management, Inc. |
| DX_088 | | | Dep Ex. 17 3/31/2023 Brightstar Entities First Requests for Admission to Plaintiffs |
| DX_089 | | | Dep Ex. 18 5/15/2023 Platintiff's Objections and Responses to Brightstar Entities First Request for Admission |
| DX_090 | | | 7/23/2020 Plaintiff Subscriber Holdings, LLC's Objections and Responses to Defendant's First Set of Interrogatories |
| DX_091 | | | 8/12/2020 Plaintiff Subscriber Holdings, LLC's Supplemental Objections and Responses to Defendant's First Set of Interrogatories |
| DX_092 | | | 5/15/2023 Plaintiff Subscriber Holdings, LLC's Objections and Responses to Defendant's Second Set of Interrogatories |
| DX_093 | | | 7/7/2023 Plaintiff Subscriber Holdings, LLC's Supplemental Objections and Responses to Defendant's Second Interrogatories |

Additional resources:

- Gary Fagg, *Credit Life and Disability Insurance* (CLICO Management, Inc., 1986);

- John S. Mailho & Gary Fagg, *What you don't know leaves Money On The Table* (CreditRe Corporation 1992);

- Gary Fagg & Joseph Fairchild, *Credit-Related Property and Casualty Insurance* (CreditRe Corporation, 1998);

- Georgia Code Section 33-7-3.1

# ATTACHMENT G-3

## Joint list of all documentary and physical evidence that may be tendered at trial.

| Trial Ex. No. | Bates Begin | Bates End | Plaintiff's Description | Defendant's Description |
|---|---|---|---|---|
| JX_001 | BDP00002478 | BDP00002478 | Email from Taylor re: Woodward | 9/18/2020 Fwd: Voice Message Attached from 4047545154 - WOODWARD SEAN |
| JX_002 | BDP00002479 | | | Sean Woodward Voicemail |
| JX_003 | BDP00000268 | BDP00000271 | Email from Woodward re: follow-up | 8/29/2012 Re: Clay Bodnarek - eSecuritel - Contact information per your voicemail for Jenn Taylor |
| JX_004 | BDP00000070 | BDP00000074 | Email from Taylor re: Opportunity | 9/6/2012 Email from J. Taylor to C. Bodnarek re Interesting business opportunity - Subscriber contract Insurance - follow up |
| JX_005 | BDP00000001 | BDP00000003 | Email from Bodnarek re: Product Discussions | 9/13/2012 Email from C. Bodnarek to J. Taylor re contract breakage/credit protection product discussions - confidential per NDA |
| JX_006 | BDP00000166 | BDP00000167 | Email from Bodnarek re: Sample Program | 9/19/2012 Re: Sample Program Guide |
| JX_007 | BDP00000127 | BDP00000130 | Email from Woodward re: Program Guide | 10/8/20102 Re: Subscriber Holdings - Subscriber Assurance Program Guide 09-28-2012 |
| JX_008 | BDP00000008 | BDP00000011 | Email from Bodnarek re: Program Guide | 10/8/2012 Email from C. Bodnarek to G. Kashyap re Subscriber Holdings - Subscriber Assurance Program Guider 09-28-2012 |
| JX_009 | BDP00000012 | BDP00000032 | SAP 2 | |
| JX_010 | BDP00000098 | BDP00000101 | Email from Bodnarek re: follow-up | 2/15/2016 Email from C. Bodnarek to J. Rouse re payment relief follow up |
| JX_011 | BDP00000102 | BDP00000122 | SAP 2 | |
| JX_012 | BDP00002426 | BDP00002426 | Memo from Bodnarek | Email re New Product Ideas |
| JX_013 | BDP00002384 | BDP00002386 | | Email from C. Bodnarek to J. Harper re eSec SWOT |
| JX_014 | BDP00002387 | BDP00002399 | Presentation re: US/Canada Sales Plan | 11/28/2012 eSecuritel's 2013 Canada Sales Plan |

| JX_015 | BPD00002400 TYPO | BDP00002419 | Presentation re: US/Canada Sales Plan | 2013 - US/Canada Sales Plan |
|--------|------------------|-------------|----------------------------------------|------------------------------|
| JX_016 | BDP00002158 | BDP00002163 | Email from Taylor re: CES 2012 | 1/15/2012 Email from J. Taylor to C. Bodnarek re T-Mobile/Brightstar CES 2012 meeting summary and action items |
| JX_017 | BDP00001564 | BDP00001578 | Presentation re: Upgrade Options | 7/16/2013 Brightstar's Carrier's New Upgrade Options Plans and Implications presentation<br><br>7/16/2013 Carrier's New Upgrade Options Plans and Implications |
| JX_018 | BDP00000581 | BDP00000601 | Article re: phone upgrade | 11/22/2012 https://www.phonearena.com/news/How-to-check-if-you-are-eligible-for-a-phoneupgrade-with-AT-T-Verizon-Sprint-or-T-Mobile_id36906 |
| JX_019 | BDP00000604 | BDP00000605 | Article re: phone upgrade | 7/16/2013 https://techland.time.com/2013/07/16/smartphones-early-upgrade-plans-rangefrom-risky-to-ripoff/ |
| JX_020 | BDP00000331 | BDP00000337 | Article re: T-Mobile JUMP! | 8/14/2020 Article: The Ultimate Guide to T-Mobile's iPhone Upgrade Program |
| JX_021 | BDP00003255 | BDP00003257 | Article re: iPhone | 6/8/2010 Article: AT&T answers questions about iPhone |
| JX_022 | BDP00000629 | BDP00000629 | Article re: phone upgrade. | 11/10/2012 https://www.iphoneincanada.ca/2011/04/28/rogers-to-launch-new-early-upgradefee-on-may-5/ |
| JX_023 | BDP00002087 | BDP000002089 | Article re: O2 phone upgrade | 4/12/2013 Article: O2 launches new tariff allowing customers to get the latest phone whenever they want - Virgin Media O2 |
| JX_024 | BDP00000602 | BDP00000603 | Article re: phone upgrade | 4/24/2013 "Phone upgrade" portion of Three.co.uk as of April 24, 2013, as viewed through the Wayback Machine |
| JX_025 | BDP00000606 | BDP00000610 | Article re: phone upgrade | 7/16//2013 https://www.theverge.com/2013/7/16/4526380/at-t-fires-back-at-t-mobile-jumpwith-next-upgrade-installment-plan |
| JX_026 | BDP00002121 | BDP00002123 | Email from Schrier re: how T-Mobile Upgrade works | 7/15/2013 How JUMP upgrade program from T-Mobile works |

## ATTACHMENT G-1-A

**Defendants' objections, if any, to Plaintiff Subscriber Holdings, LLC's exhibit list.**

Defendants' objections to Plaintiff's exhibits refer to the Fed. R. Evid. numbers,

and reserve the right to object to the exhibit as used by Plaintiff at trial:

| Trial Ex. No. | Bates Begin | Bates End | Defendant's Objection |
|---|---|---|---|
| PX_034 | BPD00002050 TYPO | BDP00002075 | Foundation; 402; 403 |
| PX_038 | BDP00001966 | BDP00002017 | Foundation; 403 |
| PX_039 | BDP00002380 | BDP00002380 | 402; 403 |
| PX_040 | BDP00002381 | BDP00002381 | 402; 403 |
| PX_041 | BDP00002382 | BDP00002382 | 402; 403 |
| PX_043 | BDP00002394 | BDP00002395 | Is part of Joint Ex. 14 and the whole document should be used, not a portion |
| PX_044 | BDP00000632 | BDP00000731 | Foundation; 402; 403; 802 |
| PX_045 | BDP00000970 | BDP00000977 | Foundation; 402; 403; 802 |
| PX_046 | BDP00001320 | BDP00001391 | Foundation; 402; 403; 802 |
| PX_047 | BDP00002250 | BDP00002267 | Foundation; 402; 403; 802 |
| PX_048 | BDP00002336 | BDP00002348 | Foundation; 402; 403; 802 |
| PX_049 | BDP00002349 | BDP00002362 | Foundation; 402; 403; 802 |
| PX_050 | BDP00002363 | BDP00002379 | Foundation; 402; 403; 802 |
| PX_053 | MLS000493 | MLS000573 | Foundation; 402; 403; 802 |
| PX_054 | MLS000639 | MLS000718 | Foundation; 402; 403; 802 |
| PX_055 | MLS000901 | MLS000949 | Foundation; 402; 403; 802 |
| PX_056 | MLS001228 | MLS001296 | Foundation; 402; 403; 802 |
| PX_057 | MLS001297 | MLS001313 | Foundation; 402; 403; 802 |

| PX_058 | TMOSUBH0032 | TMOSUBH0067 | Foundation; 402; 403; 802 |
| PX_059 | TMOSUBH0102 | TMOSUBH0173 | Foundation; 402; 403; 802 |
| PX_061 | TMOSUBH0001 | TMOSUBH0029 | Foundation; 402; 403; 802 |
| PX_062 | TMOSUBH0030 | TMOSUBH0031 | Foundation; 402; 403; 802 |
| PX_063 | TMOSUBH0068 | TMOSUBH0070 | Foundation; 402; 403; 802 |
| PX_064 | TMOSUBH0071 | TMOSUBH0093 | Foundation; 402; 403; 802 |
| PX_065 | TMOSUBH0094 | TMOSUBH0099 | Foundation; 402; 403; 802 |
| PX_066 | TMOSUBH0100 | TMOSUBH0101 | Foundation; 402; 403; 802 |
| PX_067 | TMOSUBH0174 | TMOSUBH0181 | Foundation; 402; 403; 802 |
| PX_069 | SUB0002383 | SUB0002383 | 403; 802 |
| PX_070 | SUB0002684 | SUB0002687 | Foundation; 402; 802 |
| PX_071 | SUB0002598 | SUB0002683 | 402; 403 |
| PX_073 | SUB0001466 | SUB0001468 | Foundation; 802 |
| PX_074 | SUB0001427 | SUB0001444 | Foundation; 802 |
| PX_076 | SUB0006532 | SUB0006534 | Foundation; 802 |
| PX_079 | SUB0001425 | SUB0001426 | Foundation; 802 |
| PX_080 | SUB0001455 | SUB0001461 | Foundation; 402; 802 |
| PX_081 | SUB0006631 | SUB0006633 | 402; 802 |
| PX_084 | | | 802 |
| PX_085 | | | 802 |
| PX_086 | | | 402; 802 |
| PX_087 | | | Undefined; 403 |
| PX_088 | | | Undefined; 402; 403; 802 |

# ATTACHMENT G-2-A

**Plaintiff Subscriber Holdings, LLC's objections, if any, to Defendant's exhibit list.**

| Trial Ex. No. | Bates Begin | Bates End | Plaintiff's Objections |
|---|---|---|---|
| DX_001 | SUB0000167 | SUB0000205 | |
| DX_002 | SUB0000166 | | |
| DX_003 | BDP00001810 | BDP00001965 | Foundation; 402; 802 |
| DX_004 | | | |
| DX_005 | BDP00000136 | BDP00000139 | |
| DX_006 | BDP00000141 | BDP00000142 | |
| DX_007 | BDP00000249 | BDP00000250 | |
| DX_008 | BDP00000245 | BDP00000248 | |
| DX_009 | BDP00000251 | BDP00000252 | |
| DX_010 | BDP00000253 | BDP00000254 | |
| DX_011 | BDP00000257 | BDP00000258 | |
| DX_012 | BDP00000262 | | |
| DX_013 | BDP00000263 | | |
| DX_014 | BDP00001562 | BDP00001563 | Foundation; 402; 802 |
| DX_015 | BDP00002035 | BDP00002049 | Foundation; 402; 802 |
| DX_016 | BDP00002095 | BDP00002098 | |
| DX_017 | BDP00002099 | BDP00002101 | |
| DX_018 | BDP00002119 | BDP00002120 | |
| DX_019 | BDP00002205 | BDP00002249 | Foundation; 402; 802 |
| DX_020 | BDP00002429 | BDP00002432 | Foundation; 402; 802 |
| DX_021 | BDP00002433 | BDP00002452 | Foundation; 402; 802 |
| DX_022 | BDP00002453 | | Foundation; 802 |
| DX_023 | BDP00002770 | | 402;403;802 |

| DX_024 | BDP00002771 |             | Foundation; 402; 403; 802 |
| DX_025 | BDP00002477 |             | 402;403;802 |
| DX_026 | BDP00002627 |             | Foundation; 402; 802 |
| DX_027 | BDP00002628 | BDP00002639 | Foundation; 402; 802 |
| DX_028 | BDP00002647 |             | Foundation; 402; 802 |
| DX_029 | BDP00002658 |             | Foundation; 402; 403; 802 |
| DX_030 | BDP00002731 |             | Foundation; 402; 802 |
| DX_031 | BDP00002732 | BDP00002740 | Foundation; 402; 802 |
| DX_032 | BDP00003268 | BDP00003271 | Foundation; 402; 802 |
| DX_033 |             |             |  |
| DX_034 | BDP00000338 | BDP00000347 | Foundation; 402; 802 |
| DX_035 | BDP00000356 | BDP00000408 | 402; 403 |
| DX_036 | BDP00000409 | BDP00000461 | 402; 403 |
| DX_037 | BDP00000462 | BDP00000514 | 402; 403 |
| DX_038 | BDP00000611 | BDP00000614 | Foundation; 402; 802 |
| DX_039 | BDP00000615 | BDP00000617 | Foundation; 402; 802 |
| DX_040 | BDP00000618 | BDP00000620 | Foundation; 402; 802 |
| DX_041 | BDP00000621 | BDP00000628 | Foundation; 402; 802 |
| DX_042 | BDP00000630 | BDP00000631 | Foundation; 402; 802 |
| DX_043 | BDP00000329 | BDP00000330 | Foundation; 402; 802 |

| DX_044 | BDP00000354 | BDP00000355 | Foundation; 402; 802 |
|--------|-------------|-------------|----------------------|
| DX_045 | BDP00002085 | BDP00002086 | Foundation; 402; 802 |
| DX_046 | BDP00002090 | BDP00002093 | Foundation; 402; 802 |
| DX_047 | BDP00002094 | BDP00002094 | Foundation; 402; 802 |
| DX_048 | BDP00000348 | BDP00000349 | Foundation; 402; 802 |
| DX_049 | BDP00000350 | BDP00000353 | Foundation; 402; 802 |
| DX_050 | BDP00002142 | BDP00002152 | Foundation; 402; 802 |
| DX_051 | BDP00003258 | BDP00003261 | Foundation; 402; 802 |
| DX_052 | BDP00003262 | BDP00003264 | Foundation; 402; 802 |
| DX_053 | BDP00003265 | BDP00003267 | Foundation; 402; 802 |
| DX_054 | BDP00002372 | BDP00002376 | Foundation; 402; 802 |
| DX_055 | BDP00003277 | BDP00003286 | Foundation; 402; 802 |
| DX_056 | BDP00003287 | BDP00003298 | Foundation; 402; 802 |
| DX_057 | BDP00003299 | BDP00003324 | Foundation; 402; 802 |
| DX_058 | BDP00003325 | BDP00003355 | Foundation; 402; 802 |
| DX_059 | BDP00003356 | BDP00003376 | Foundation; 402; 802 |
| DX_060 | BDP00003377 | BDP00003396 | Foundation; 402; 802 |
| DX_061 | BDP00003397 | BDP00003426 | Foundation; 402; 802 |
| DX_062 | BDP00003427 | BDP00003430 | Foundation; 402; 802 |
| DX_063 | BDP00003431 | BDP00003433 | Foundation; 402; 802 |
| DX_064 | BDP00003434 | BDP00003436 | Foundation; 402; 802 |
| DX_065 | BDP00003437 | BDP00003444 | Foundation; 402; 802 |
| DX_066 |  |  |  |

| | | | |
|---|---|---|---|
| DX_067 | | | |
| DX_068 | | | |
| DX_069 | | | |
| DX_070 | | | |
| DX_071 | | | |
| DX_072 | | | |
| DX_073 | | | |
| DX_074 | | | |
| DX_075 | | | |
| DX_076 | | | |
| DX_077 | | | |
| DX_078 | | | |
| DX_079 | | | |
| DX_080 | | | |
| DX_081 | | | |

| | | | |
|---|---|---|---|
| DX_082 | | | |
| DX_083 | | | |
| DX_084 | | | |
| DX_085 | | | Foundation; 402; 802 |
| DX_086 | | | Foundation; 402; 802 |
| DX_087 | | | Foundation; 402; 802 |
| DX_088 | | | |
| DX_089 | | | |
| DX_090 | | | |
| DX_091 | | | |
| DX_092 | | | |
| DX_093 | | | |

## ATTACHMENT H-1

**Plaintiff Subscriber Holdings, LLC's trial briefs which counsel may wish to file containing citations to legal authority concerning evidentiary questions and any other legal issues which counsel anticipate will arise during the trial.**

The Parties request that they be permitted to file trial briefs, if any, no later than fourteen (14) days prior to start of trial, with any responses to such briefs being filed seven (7) days prior to trial.

## ATTACHMENT H-2

**Defendants' trial briefs which counsel may wish to file containing citations to legal authority concerning evidentiary questions and any other legal issues which counsel anticipate will arise during the trial.**

The Parties request that they be permitted to file trial briefs, if any, no later than fourteen (14) days prior to start of trial, with any responses to such briefs being filed seven (7) days prior to trial.

# ATTACHMENT I-1

**Plaintiff Subscriber Holdings, LLC's proposed verdict form.**

We, the Jury in the above-entitled action, find the following verdict on the questions submitted to us:

***Subscriber Holdings, LLC's Claim Against Brightstar Corp., Brightstar Device Protection, LLC f/k/a eSecuritel Holdings LLC, Brightstar Re Ltd. f/k/a eSecuritel Re Ltd., and Brightstar US, Inc. (collectively referred to herein as "Defendants") for Misappropriation of Trade Secrets***

Question No. 1:  Do you find that the information that Subscriber Holdings, LLC seeks to protect constitute as a trade secret, as the Court has defined the law to you?

      _____ Yes   _____ No

      If your answer to Question No. 1 is Yes, then answer Question No. 2.  If your answer is No, then answer Question No. 6.

Question No. 2:  Did Defendants misappropriate Subscriber Holdings, LLC's trade secrets by using those trade secrets?

      _____ Yes   _____ No

      If your answer to Question No. 2 is Yes, then answer Question No. 3.  If your answer is No, then answer Question No. 6.

Question No. 3:  What is the amount, stated in Dollars and Cents, that Defendants was enriched as a result of its improper use of Subscriber Holdings, LLC's trade secrets?

      $_____

      Once you answer Question No. 3, please answer Question No. 4.

Question No. 4:  Was Defendants' misappropriation of Subscriber Holdings, LLC's trade secrets willful such that Defendants should recover additional damages and attorneys' fees?

      _____ Yes   _____ No

      If your answer to Question No. 4 is Yes, then answer Question No. 5.  If your answer is No, then answer Question No. 6.

Question No. 5:          What amount of damages would sufficiently deter Defendants from engaging in similar willful conduct in the future?  State the amount in Dollars and Cents.

$ _____.

### ***Subscriber Holdings, LLC's Claim Against eSecuritel Holdings LLC ("eSecuritel Holdings") for Breach of Non-Disclosure Agreement***

Question No. 6:          Did eSecuritel Holdings breach its obligations under the Confidentiality provisions in the Non-Disclosure Agreement?

_____ Yes          _____ No

If your answer to Question No. 6 is Yes, then answer Question No. 7.  If your answer is No, then stop, have the Foreperson sign this Verdict Form and return the Verdict Form to the Court.

Question No. 7:          Did eSecuritel Holdings' breach of the Confidentiality provisions in the Non-Disclosure Agreement cause harm to Subscriber Holdings, LLC?

_____ Yes          _____ No

If your answer to Question No. 7 is Yes, then answer Question No. 8.  If your answer is No, then stop, have the Foreperson sign this Verdict Form and return the Verdict Form to the Court.

Question No. 8:          What amount will fairly and adequately compensate Subscriber Holdings, LLC for eSecuritel Holdings' breach of the Non-Disclosure Agreement with Subscriber Holdings, LLC?  State the amount in Dollars and Cents.

$_____.  **If you answered Question No. 8, then the amount stated in response to Question No. 8 must be the same as the amount stated in Question No. 3.**

**Once completed, the Foreperson must sign this form and return it to the Court.**


_____

Foreperson

## ATTACHMENT I-2

**Defendants' proposed verdict forms:**

Defendants request this Court bifurcate the trial. If that request is granted, Defendants propose the following as the two phased jury verdict form:

## <u>JURY VERDICT FORM (Phase 1)</u>

Having heard the evidence presented in the above referenced matter, we the jury hereby find:

1.    Has Subscriber Holdings established that the Subscriber Assurance Program constitutes a trade secret? Yes or No (circle one).

      a. If Yes, the identity and scope of the trade secret is:

      _____

      _____

      b. If No, skip to question number 5.

2.    Has Subscriber Holdings established that it owns the Subscriber Assurance Program? Yes or No (circle one).

      a. If No, skip to question number 5.

3.    Has Subscriber Holdings established any defendant misappropriated the Subscriber Assurance Program? Yes or No (circle one).

    a.  If Yes, which defendant(s): _____

    b.  If No, skip to question number 5.

4.   Has Subscriber Holdings established that any defendant's misappropriation was willful? Yes  or  No (circle one).

    a.  If Yes, which defendant(s): _____

5.   Has Subscriber Holdings established Brightstar Device Protection breached the Non-Disclosure Agreement?  Yes  or  No  (circle one).

6.   What date did Subscriber Holdings know or should have known of its claims: _____.

This ___ day of _____, _____.

_____
Jury Foreperson:

## **JURY VERDICT FORM (Phase 2)**

Having heard the evidence presented in the above referenced matter, we the jury hereby find:

1.   Has Subscriber Holdings established it is entitled to damages from any misappropriation of the Subscriber Assurance Program:  Yes  or  No  (circle one).

      a.  If Yes, in the amount of: _____

      b.  If Yes, as to which defendant(s): _____

      c.  If No, leave blank.

2.      Has Subscriber Holdings established it was damaged as a result of a breach of the Non-Disclosure Agreement?  Yes  or  No  (circle one).

      a.  If Yes, in the amount of: _____

      b.  If No, leave blank.

3.      If you find damages for trade secret misappropriation in response to Question No. 1 and for breach of contract in response to Question No. 2, do you find that the damages are separate and distinct and therefore should be added together to calculate the total damages you are awarding against Brightstar Device Protection? Yes  or  No  (circle one).

      a.  If Yes, the total amount you intend to award against Brightstar Device Protection is: _____

      b.  If No, leave blank.

This ___ day of _____, _____.

                                 _____

Jury Foreperson:

If Defendants' request for bifurcation is denied, the Defendants propose the following verdict form:

## **JURY VERDICT FORM**

Having heard the evidence presented in the above referenced matter, we the jury hereby find:

1.    Has Subscriber Holdings established that the Subscriber Assurance Program constitutes a trade secret?  Yes  or  No  (circle one).

      a. If  Yes,  the  identity  and  scope  of  the  trade  secret  is:

      _____

      _____

      b. If No, skip to question number 6.

2.    Has Subscriber Holdings established that it owns the Subscriber Assurance Program?  Yes  or  No  (circle one).

      a.  If No, skip to question number 6.

3.      Has Subscriber Holdings established any defendant misappropriated the Subscriber Assurance Program?  Yes  or  No (circle one).

      a.  If Yes, which defendant(s): _____

      b.  If No, skip to question number 6.

4.      Has  Subscriber  Holdings  established  that  any  defendant's misappropriation was willful? Yes  or  No (circle one).

      a.  If Yes, which defendant(s): _____

5.      Has Subscriber Holdings established it is entitled to damages from any misappropriation of the Subscriber Assurance Program:  Yes  or  No  (circle one).

      a.  If Yes, in the amount of: _____

      b.  If Yes, as to which defendant(s): _____

      c.  If No, leave blank.

6.      Has  Subscriber  Holdings  established  Brightstar  Device  Protection breached the Non-Disclosure Agreement?  Yes  or  No  (circle one).

7.      Has  Subscriber  Holdings  established  it  was  damaged  as  a  result  of  a breach of the Non-Disclosure Agreement?  Yes  or  No  (circle one).

a.  If Yes, in the amount of: _____

b.  If No, leave blank.

8.      If you find damages for trade secret misappropriation in response to Question No. 4 and for breach of contract in response to Question No. 6, do you find that the damages are separate and distinct and therefore should be added together to calculate the total damages you are awarding against Brightstar Device Protection? Yes  or  No  (circle one).

a.  If Yes, the total amount you intend to award against Brightstar Device Protection is: _____

9.  If No, leave blank.

10.      What date did Subscriber Holdings know or should have known of its claims: _____.

This ___ day of _____, _____.

_____

Jury Foreperson:

# ATTACHMENT J-1

**Plaintiff Subscriber Holdings, LLC's Deposition Designations.**

**Gregory James Tibbles 01/16/2025**
6:12-25
7:1
26:18-20
31:20-25
32:1-5
32:12-25
33:1-5
35:8-25
36:1-25
37:1-25
39:1-25
40:1-25
41:1-25
42:1-8
42:20-25
43:13-20
49:11-17
52:23-25
53:20-25
56:9-25
57:1-16
58:16-23
59:7-25
60:1-25
61:1-20


**Edward Ross Hickman 01/14/2025**
20:22-25
21:1-25
22:7-25
23:1-25
24:1-14
25:7-15
30:4-25
31:1-24
33:23-25
34:1-4
37:8-25
38:1-14
41:19-25

42:1-17
56:23-25
57:1-25
58:1-5
59:17-25
60:1-22

**<u>Gregory James Tibbles 09/17/2024</u>**
6:21-25
7:5-15
8:3-5
8:13-18
8:20-23
10:4-8
11:11-18
15:18-25
16:1
17:6-12
18:19-25
19:1-5
19:23-25
20:1-4
21:3-6
24:20-25
25:1
25:20-25
26:1-8
27:15-16
27:18-19
27:24-25
28:1-7
29:14-17
32:11-15
33:6-9
35:7-22
36:7-14
37:10-25
38:1-7
44:2-25
45:1-25
46:1-14
46:21-25
47:1-2

49:9-18
50:16-21
51:7-19
52:12-25
53:1-6
54:1-3
54:13-18
55:10-25
56:1-21
60:16-19
60:23-25
61:1-12
61:18-25
62:1-12
62:18-25
63:1-2
69:13-25
70:1-8)
71:23-25
72:1-5
76:12-25
77:1
77:5-25
78:1-12
90:1-18
95:3-17
97:15-23
98:24-25
99:1-16
105:12-15
109:19-25
110:1-25
111:1-3
114:8-25
115:1

**Clayton Bodnarek 09/13/2024**
12:24-25
13:1-25
14:1-25
15:1-25
16:1-25
17:1-25

18:1-25
19:1-4
21:8-25
22:1-10
23:20-25
24:1-25
25:1-17
26:1-12
26:19-25
27:1-6
27:22-25
28:1-19
30:22-25

**Clayton Bodnarek 10/28/2020**
7:8-12
8:17-24
9:1-9
9:20-24
10:3-4
10:7-24
11:1-24
12:1-22
13:17-24
14:1-16
14:22-24
15:5-21
16:12-24
17:1-24
18:1-24
19:1-24
20:1-3
20:16-21
28:21-24
29:1-24
30:1-24
31:1-3
31:17-24
32:1-24
33:9-24
34:1-7
35:24
36:1-18

40:4-24
41:1-24
42:1-24
43:--24
44:1-24
45:1-16
46:24
47:1-16
51:16-24
52:1-24
53:1-24
54:1-17
57:13-24
58:1-10
62:1-8
66:4-24
67:1-16
68:2-24
69:1-24
71:7-24
72:11-24
73:1-20
75:1-24
76:1-24
77:1-11
77:24
78:1-2
79:24
80:1-11
82:4-5
82:13-17
83:15-24
84:1-15
86:13-24
87:1-24
88:1-24
89:1-4
93:1-20
94:7-24
95:1-16
96:5-24
97:1-10
104:3-19

105:23-24
106:1-23
107:1-12
108:11-12
109:8-24
110:1-23
113:22-24
114:2-15
115:10-24
116:1-17
117:24
118:1-22
119:15-24
120:1-11